## No. 7368.

### CITIZENS' BANK VS. BOUNY, TAX COLLECTOR.

The exemption of the capital of the Citizens' Bank by section four of the act of the Legislature of 1836, amending its charter, being based on a valuable consideration, was therefore a legal and binding contract, and thereafter exempted from all State, parish, and municipal taxation the capital of the bank, and all that portion of its profits which were capitalized.

The Legislature may impose a tax on any property unless restrained by some prohibitory clause in the constitution, or by some contract.

Under the peculiar nature of the charter of the Citizens' Bank it cannot be forced to pay the taxes assessed to its shareholders on the stock of the bank held by them.

APPEAL from the Third District Court, parish of Orleans. *Monroe, J.*

J. C. Egan, Attorney-General, for the State, and S. P. Blanc, assistant city attorney, for Board of Assessors:

First—That the shares of stockholders are not exempt from taxation under the charter of the Citizens' Bank. And if they are not exempt by contract, then the Legislature under the constitution of 1868 has no power to exempt them. Section 8 of Act No. 8, p. 229, of the acts of 1878; Constitution of Louisiana of 1868, article 118; 5 Otto, 116; 4 Wal. 258; Burroughs on Tax. 125 and 170; Hilliard on Taxation, 228, § 14; 18 Wis. 281; 56 N. H. 38; 3 Dillon, 330; 3 W. 583.

Second—The shares of the stockholders being properly assessed the bank can be compelled to pay the tax. 9 Wallace, 362; Burroughs on Taxation, p. 188; 4 Wheat. 436; 4 Conn. 490; 9 Yerger, 490; 3 Wall. 573, 581; 4 Wall. 462; 9. Wall. 359, 473; 5 Otto, 687; Burroughs on Tax. 126, 171, 189.

Third—That the property sought to be exempted in this case not being used for church, school, or charitable purposes is liable to taxation. Con. of 1868; 26 A. 702; 27 A. 519; 30 A. 260; 46 Barb. 588, 598; 29 A. 851; 23 A. 307; 19 A. 475.

Armand Pitot for plaintiff and appellee:

First—That for valuable consideration received by the State, as is fully set forth in its original charter, granted in the year 1833, and the

amendatory charter, granted in 1836, the capital, and all of the capitalized earnings of the Citizens' Bank were exempted from taxation. That this constituted a valid contract between the State and the bank which could not be impaired by any subsequent act of the Legislature, or by any subsequent constitutional provision. Cooley on Con. Lim. p. 257, 275; Article 121 of the Constitution of Louisiana of 1812; 3 Wall. 294; 1 Wall. 206; 30 A. 912.

Second—That the State has no right to tax the shares of stock held by stockholders of the Citizens' Bank, because those shares are nothing more than parts of the capital stock of the bank, which is exempt from taxation. Act No. 8 of the year 1878.

The opinion of the court was delivered by

MARR, J.   Under the revenue act of 1878, extra session, No. 8, taxes were assessed on the "taxable assets of the Citizens' Bank over and above the capital stock, not including real estate," valued at $159,828 62; and on the "cash value of capital stock," $636,450.   The collector notified the bank to pay these taxes, amounting to $10,351 62; and the bank enjoined on the ground that, by the original charter of 1833, and the amended charter of 1836, its capital is exempt from all taxes.

The answer is that the exemption claimed is in violation of the law of equality and uniformity, which existed under the constitution of 1812, and which has been enunciated in all the subsequent constitutions : that the acts of 1833 and 1836 did not form a contract, and did not become a vested right in the bank : that they were, at most, merely a suspension. of the sovereign right of taxation, which was properly resecured by the constitutions of 1845, 1852, 1868, which require all property to be taxed, and assessments to be uniform ; and that the assessment of the $636,450 on stock, in the hands of the stockholders, is not in violation of the right of exemption claimed by the bank.

The judgment appealed from declared the assessment null and void ; and perpetuated the injunction.

By the original charter, act of 1833, section 29, it was provided that " all the profits of the bank shall be added to and made part of its capital," except such dividends as it was authorized to make after the redemption of each series of its bonds, payable at five distinct periods. At each of these periods one fifth of the profits, if any, were to be divided among the stockholders.

By section 30 of the same act, in consideration of the cession of valuable rights to the State, or the payment of $500,000 in lieu thereof, " the said corporation shall, during its existence, be exempt, in its capital and property which it may acquire, by virtue of the provisions of this act, from all taxes to the State, or to any parish or corporation created by this State."

By the amendatory and supplementary act of 1836, the bank was relieved of some of the obligations imposed upon it by the act of 1833 ; and the consideration upon which the exemption had been granted ceased and failed. By section four of this amendatory act, p. 17, a portion of the profits was to be paid to the State ; " and the capital of said bank shall be exempt from any tax laid by the State, or by any parish or body politic under the authority of the State, during the continuance of its charter."

Under the constitution of 1812, the Legislature had the power to select the objects of taxation ; and the consequent right to exempt from taxation. The exemption granted by the act of 1833 need not be considered, because it was modified and superseded by that granted by section four of the act of 1836, which was accepted by the bank ; and it is upon this exemption that the right of the bank depends.

By its terms this exemption is limited to the capital of the bank ; and it covers the profits, or that part of the profits which section 29, of the act of 1833, requires to be added to and made part of the capital. No proof in the record shows that any part of the $159,828 62 is subject to taxation ; and no part of that sum can be taxed separately, if it represents capitalized earnings. If it is the property of the bank, and it is assessed as such, it must be profits, and, therefore, capital.

There is a wide difference between the mere gratuitous exemption of a corporation from taxation, and an exemption granted, as in this case, upon a valuable consideration. In the first case it is a mere suspension of the sovereign right to tax all property, which the State may resume at pleasure, and which it does resume whenever it sees fit to impose, by law, a tax on the property. But where the exemption is granted upon a valuable consideration, fixed and accepted by the State, such exemption is a contract between the State and the corporation, if within the constitutional power of the Legislature. It becomes a vested right, which the Constitution of the United States forbids the State to violate or impair ; and the organic law of Louisiana, from the formation of the State government to the present time, has respected and consecrated the inviolability of contracts, which is founded in common honesty, and the obligations of good faith. Cons. 1812, Art. V, section 20 ; 1845, Art. 109 ; 1852, Art. 105 ; 1868, Art. 110.

All the revenue acts under the constitution of 1868, prior to the act of 1878, subjected to taxation " the capital stock of all banks or corporations doing business in this State, not expressly exempted from taxation by their charters granted by this State." Acts of 1868, p. 248 ; 1869, p. 147 ; 1870, extra session, p. 126 ; 1871, p. 104 ; 1872, p. 55. None of them specifically taxed the stockholders on their shares of the bank

16

stock ; but all of them taxed " capital invested or employed each year
in any trade or commerce."

The judge of the district court attached importance to the fact that
no tax was ever imposed on the capital of the bank ; and that this was
the first attempt to tax the shares of stock, as such, during the existence
of the bank. We think the right of the State to tax, within the restric-
tions of the organic law, is inherent ; and where no contract has been
made, binding the State not to tax, the power to tax may be exercised
at any time, with respect to objects and property which had never
before been subjected to taxation. The mere failure of the State to ex-
ercise any constitutional right cannot be held to be a surrender of that
right.

The act of 1878, section 1, after fixing the rate of taxation, $ad$
$valorem$, proceeds, in distinct paragraphs, to enumerate the objects of tax-
ation. The sixth paragraph specifies " all capital      *  .     *       *
except the capital stock of banks and banking associations, whose
shares are taxed in the hands of the shareholders." The seventh
paragraph designates " the property of whatever kind, of all corpora-
tions, over and above their capital stock ; " and the eighth paragraph
subjects the shares of stockholders in all banks and banking associa-
tions." A subsequent clause of this paragraph requires the officers of
these institutions to pay to the tax collectors the taxes on the shares on
account of the stockholders, at the dates when the respective taxes,.
State, parish, or municipal fall due.

We do not find in this act any indication of the intention of the
Legislature to tax the capital of the banks ; and it was clearly not in
the power of the State to tax the capital of this bank. It is not neces-
sary to express any opinion now as to the power of the State to require
this bank to pay the taxes due by the stockholders, without regard to
the state of account between them and the bank. Numerous decisions,.
of the highest authority, maintain that the exemption of the capital of
a bank does not impair the right of the State to tax the shares in the
hands of the stockholders ; and, without so deciding absolutely, we shall
assume, for the purposes of this case, that the charter exemption of the
capital of the bank does not extend to the shares in the hands of the
stockholders. See McCullough v. Maryland, 4 Wheaton ; 4 Conn. Rep.
490, 491 ; Union Bank v. State, 9 Yerger, 490 ; Van Allen v. Assessors, 3
Wallace, 583, 584 ; People v. Commissioners, 4 Wallace, 258 ; Bradley v.
People, 4 Wallace, 462 ; Bank v. Commonwealth, 9 Wallace, 359 ; Lion-
berger v. Rouse, 9 Wallace, 473 ; Farrington v. Tennessee, 5 Otto, 687.

Comparing the first clause of the eighth paragraph of the act of
1878 with the sixth paragraph, p. 229, it will be seen that it was as
clearly the intention of the Legislature not to tax the banks on their capital

as it was to tax the stockholders on their shares.   The scope and mean-
ing of the second clause of the eighth paragraph are not so obvious.
"Said shares shall be assessed at their value, *after deducting from the
capital stock of said banks and banking associations* ALL PROPERTY OTHER-
WISE ASSESSED OR EXEMPT FROM TAXATION."   None of the property of this
bank is exempt, except the capital; and the property of the bank, in
excess of its capital, not including real estate, is assessed at a valuation
of $159,828 62.  If the Legislature intended that the capital of the bank,
which is exempt, and the assessed value of its property, real and per-
sonal, "otherwise assessed," should be deducted from the capital stock,
what would remain as the basis of the valuation of the shares?   The
shares are not to be assessed at their market value, but at their value
after the required deduction.   The constitution, art. 118, prescribes that
"all property shall be taxed in proportion to its value, *to be ascertained
as directed by law;*" and this act, the first law subjecting the shares of
bank stock, specifically, has directed the manner of ascertaining the
value to be taxed.

The literal interpretation of this clause would leave nothing to be
taxed but the excess of the value of the shares above par, and above
the value of the real and personal property of the bank, not capital,
"otherwise assessed;" the practical effect of which would be to exempt
the shares from taxation.   If the words "all property" do not include
the capital, but mean real and personal property, something tangible,
not part of the capital, the remainder, after deducting the aggregated
value of such property, would be the basis of the valuation of the
shares.   The several shares would be taken and estimated as so many
parts of this remainder, not as subdivisions of the capital stock; and
their value would be ascertained, and the tax levied with respect to this
remainder, not with reference to the entire capital stock.

If the word "property" does not include the capital, then the words
"or exempt from taxation" must be construed as having no meaning
with respect to this bank, since no property of the bank is exempt except
its capital.   But this would not solve the difficulty.   Whether the capital
is or is not included, and to be deducted, all the other property of the
bank, "otherwise assessed," must be deducted.   It is easy to ascertain
the cash value in the market of shares representing fixed portions of
the capital stock of a bank ; but this would not indicate the value of the
shares after the deduction provided for.   The actual value of the shares
would neither be increased nor diminished by this deduction, made in
calculation only, for the purpose of taxation ; but as the Legislature has
chosen to prescribe this arbitrary mode of ascertaining the value to be
taxed, the assessors had no power to fix the value otherwise.

The third clause of this paragraph is :   "And said shares shall be

included at such ascertained value in the valuation of the personal property of such stockholders in the assessment of taxes," etc. The meaning is clear. The value to be assessed and taxed must be ascertained in the manner presented in the preceding clause, and not otherwise.

The assessors give the names of the stockholders in the assessment roll, the number of shares owned by each, and the value $42 43 a share. These several values, carried into the column headed "cash value of the capital stock of all banks or other corporations doing business in this State, not expressly exempted from taxation by their charters granted by this State," are aggregated, without any deduction whatever ; and upon this aggregated value, and the $159,828 62, the tax of 13 mills is levied.

It has been suggested that, if the eighth paragraph is to be so construed as to exempt the shares of stock from taxation, it is in violation of the constitution, art. 118 ; and that the shares may be taxed as capital. However this may be, the assessment is not on capital invested or employed, and it is not necessary for us to say what might be the effect of an assessment which has not been made.

Manifestly, the assessors have estimated the cash value of the entire capital stock of the bank ; and as the assessment roll shows, they have not attempted to ascertain the value of the shares in the manner prescribed in the second clause ; and they have not included that value in the assessment, as required by the third clause. The assessment has not been made in accordance with the law ; and it is a nullity.

The judgment appealed from is, therefore, affirmed with costs.

---

## On Rehearing.

Spencer, J. It will be seen by our former opinion in this case, that there is demanded of the bank taxes,

First, on $159,828 62 assessed as "taxable assets over and above the capital stock," and

Second, on $636,450 assessed to the shareholders of said bank, as " value of capital stock," etc.

The taxes so assessed to the stockholders are demanded of the bank, under the revenue act of 1878, which requires the banks to pay such assessments.

The bank resists both demands, on the ground that by its charter it is exempt therefrom.

1. We see no reason to doubt the conclusion that by section 4 of the act of January 30th, 1836, the capital of the Citizens' Bank is ex-

empt from taxation. "The capital of said bank shall be exempt, etc., * * * during the continuance of its charter," is the language used. That language is broad enough to cover every thing which during its existence should enter into and make part of the capital of said bank.

By the 29th section of the original charter, "all the profits made by said corporation shall be added to and made a part of its capital," except a certain fraction of any excess of profits over what was necessary to pay the bonds issued by the bank. It is not pretended that any such excess of profits exists, or ever has. As a matter of fact, the bank has never declared a dividend to its shareholders. This sum of $159,828 62 is accumulated profits, which, by the charter, enter into and become part of the bank's capital, and is, therefore, exempt.

2. The shareholders of the bank have been assessed for the value of their shares or stock, and the tax thereon is demanded of the bank. Under the view we have taken of this case, it will be unnecessary to discuss the question so much argued by counsel, as to the right of the State to tax the shares of the shareholders. The bank has no mission to raise such a question, except so far as it may be necessary to protect itself. Even if the shareholders be liable to taxation on their shares (upon which we express no opinion), under the peculiar and exceptional nature of the charter of the Citizens' Bank we think it cannot be forced to pay the taxes assessed to its shareholders.

To enable this bank to obtain its capital, the State loaned it bonds to the amount of several millions ; which bonds were put upon the market and sold by the bank ; the bank binding itself to take them up at their maturities, and to pay the interest thereon as it accrued. In order to secure the State against loss, and guarantee the payment of the bonds, the mortgages and pledges given by the stockholders to secure their subscriptions and loans were transferred to the State and the bondholders. All profits were to be capitalized, except as above mentioned. No dividends were to be distributed, except out of a small fraction of any surplus of profits, after meeting and paying the maturing bonds and interest.

It is, we think, manifest that the bondholders are to be paid out of the profits of this bank by preference, and before any dividend can be declared or distributed to shareholders. It is not shown or pretended that the bank has in its possession any funds which it could legally distribute to its shareholders, or which it could pay to them without a manifest violation of its charter. If voluntary payments to or for account of its shareholders would violate its charter, and be a breach of its contract with the State and its bondholders, forced payments would be equally so. The authorities cited by the defendants are inapplicable

to the present case. Where the capital, assets, and profits of a bank are at the disposal of its shareholders, the State may perhaps compel the bank to pay their taxes on stock. But such legislation with reference to the Citizens' Bank would be violative of the vested rights of others, and, as we think, unconstitutional.

It is, therefore, ordered that our former decree remain undisturbed.