## No. 8938.

### The New Orleans Cotton Exchange vs. The Board of Assessors.

However clear may be the power, or even the duty, of the legislature to tax any particular species of property, the burden cannot be imposed, until that power is exerted.

Act No. 77 of 1880 had in contemplation the assessment and taxing of shares in money making and dividend paying corporations. It was not designed to embrace corporations like the Cotton Exchange, which is not a money making and dividend paying corporation.

The Court will not pass upon the liability *vel non* to taxation and the regularity *vel non* of the listing of property, in the absence of a law actually providing for its taxation and assessment.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston, J.*

*Bayne & Denègre* and *Miller & Finney* for Plaintiff and Appellant:

No tax can be imposed on the shares of stock of a corporation, unless over and above the property of the corporation, all of which is directly taxed; the shares have a taxable value.

This taxable value is illustrated by shares of banks, insurance companies and corporations organized to make profits for shareholders; over and above the property of such corporations taxed direct, such shares have a money or property value, *i. e.*, dividends or interest, on which the tax falls when such shares are taxed.

The mode of collecting the tax on shares, in itself, shows that only the shares of dividend or interest paying corporations was designed to be taxed; the tax is imposed on the shareholder—not the corporation—the corporation is required to pay for, and then collect the tax from the shareholder, and the law contemplates that from dividends or interest on the shares, the corporation will have in its hands, the fund out of which it can retain the tax; it follows, that the law prescribing this mode of collection, did not contemplate the taxation of shares of such corporation, as from their nature, can have in their hands no interest or dividends whatever. See Burroughs on Taxation, § 86, p 170; 3d Wallace, p.

Cotton Exchange vs. Board of Assessors.

582; 9th Wallace, p. 359. See origin and application of this mode of collecting the tax in 13th U. S. Statutes at large, p. 277. Acts 1880, p. 102, S. 43.

The Cotton Exchange organized solely to establish the Exchange, not to make profits in any shape or form for shareholders, its shares drawing no dividends or interest whatever, have no such taxable value, as exists in the taxation of shares of corporations, which draw interest or dividends, and in so far as the Cotton Exchange share represents the fractional part of the property of the corporation, if ever divided, that element of value is included in the direct taxes paid by the corporation. See Cotton Exchange charter.

Hence, over and above the property of the corporation, the Cotton Exchange share, has no value whatever, but that which arises from the right of access to the Cotton Exchange, its charter requiring each member to own one share of stock.

It follows that the value of the Cotton Exchange share proposed to be taxed in this case, is simply, and only, that derived from the privilege of admission to the Cotton Exchange, and that is not a taxable value, in any sense recognized in taxation; the tax is as unsupported as would be to tax the value of certificates of admission to the Exchange, its shares being, in effect, such certificates; or to tax shares of stock of a social club, church or other organization, representing and deriving all their value from the right, not taxable, of entering the rooms of the club or other organization.

*Chas. F. Buck*, City Attorney, and *Wynne Rogers* for Defendants and Appellees.

---

The opinion of the Court was delivered by

Bermudez, C. J. This is a proceeding to annul an assessment of stock, for the year 1882. From a judgment rejecting its demand, the plaintiff appeals.

The assessors have assessed for the year stated the plaintiff's real estate at $87,000, and its shareholders, five hundred shares, each of the value of $3,326, forming an aggregate of $1,663,000.

The questions presented are the following:

1. Are the shares *property*, in the sense that they are taxable?

2. Can they, if such property, be taxed under the Act of 1880, No. 77, which provides how shares in *corporations* shall be assessed and how the tax thereon shall be paid?

3. Have the shares been assessed, as provided by that Act, and is the corporation liable for the tax?

Differences of opinion may well exist as to the character of the shares in question and as to the power or impotence of the State to subject them to taxation; but no one will pretend that, unless the legislature has actually determined that they shall be assessed and has provided for the mode in which the assessment shall be made and the tax collected, a valid assessment of the same can be made, and a tax levied thereon can be legally claimed.

"The legislature," says, Cooley, p. 125, "must decide when and how and for what public purposes a tax shall be levied and must select the objects of taxation. This is legislative, and the legislative conclusion in the premises must be accepted as proper and final."

"No tax," says, Burroughs, § 91, p. 194, "can be levied, without the authority of the legislature of the State."

If it be true that the shares assessed are of such a nature that they are not *property*, in the sense that they are a value which can legally be taxed, then, the assessment of them, even if specially authorized by law, would be a nullity. If, on the other hand, they are *property*, which can be taxed and there exists no legislative sanction directing their assessment and providing for the mode of collection of the tax levied, the assessment complained of being unauthorized, must be annulled.

So that, from either standpoint, it is unnecessary to determine, whether the shares in question are, or not, *property* taxable under the theory of the present Constitution; particularly, as our conclusions do not tend to an affirmance of the judgment appealed from. Did we think otherwise, and then only, would it have been incumbent upon us to pass upon the nature and taxability *vel non* of the shares in question. This view of the case leads us, therefore, to the consideration and solution of the second question, which is:

## II.

Can those shares be assessed and taxed, under the Act of 1880, No. 77, which provides how shares in corporations shall be assessed, and how the tax thereon shall be paid?

It is elementary, *as already stated*, that property, however taxable, that is, however *liable to taxation*, cannot be assessed and subjected to consequent taxes, unless the only authority which had a right to speak has been heard to thus command. In other words, property, in itself taxable, cannot be assessed and be made to contribute, by taxation, to government expenses, where the legislature has not directed its assessment and provided for the mode of collecting the taxes levied upon it.

In the Forman case, recently decided, (*ante* p. 825) we had occasion emphatically to recognize and announce, as a settled principle, that, however clear be the power, or even the duty, of the legislature to levy a tax on any particular species of property, until that power had been exerted, the burden could not be imposed. The legislative intent must be explicitly and distinctly shown and cannot be extended by implication beyond the clear import of the language used. Cooley on Tax. 201, 202; Dwarris on Statutes, 742, 749; 2d Story, U. S. vs. Wiggleworth, 369. Hence, we reached the conclusion, in that case, that, as there was no legislative enactment directing the assessment of a man's *income*, such income could not be assessed and payment of

the tax thereon enforced; and we allowed the plaintiff the relief he sought, O. B. 57, fol. 786.

This is so truly correct that the defendants, on plaintiff's challenge that the shares are not taxable, because not liable to assessment, point to the Act of 1880 as their authority for listing them.

That Act, Section 48, provides, that: "the actual shares shall be assessed to the shareholders, and that, 'all the taxes so assessed shall be paid by the corporation, which shall be entitled to collect the amounts from the shareholders or their transferrees.'"

The validity of such mode of assessment and of collection was attacked, but the Supreme Court of the United States has in two cases maintained the same, for the reason that the corporation was made to pay "out of the means of the stockholder under its control," and did so by withholding the assessment out of the dividends.  9 Wall. 362; 18 Wall. 230. · An intelligent consideration of that section satisfies the legal mind, that it was designed to apply solely to money making corporations, declaring dividends or susceptible of declaring such, and in no way to the corporations, the object of which was not to make money, so as to declare profits or dividends on the shares held by their members.

An examination of the charter of the corporation, plaintiff herein, and of the testimony, establishes that it is not such a corporation, or organization, as the legislature intended to reach by the provisions of the Act quoted.

It is impossible to dissect the section, so as to say, that the first part of it, which refers to corporations generally, includes the plaintiff, and that the last portion of it, which provides for the payment of the tax on the shares, applies only to part of such corporations. The whole section contemplates one and the same class of corporations, money making and dividend paying corporations, and must be restricted to such only.

This conclusion is the more irresistible, as, at that time, the plaintiff, although it existed, was in a state of slumber, which did not reveal its existence, and surely was not in such prosperous condition, that the legislature could expect to draw by taxation any benefit from its existence.

It was not then a *going* corporation, and was barren of any good or advantage to its members.  It was a nominal concern.

The Cotton Exchange is not a monied, or property corporation, representing property invested for gain.  It pays no dividends, lends no money, transacts no business of its own, from which pecuniary profits result to itself, or to its members,  It is, by the express law of its creation, an association, the purpose of which is " to provide and maintain

suitable rooms for a Cotton Exchange, in the City of New Orleans." It owns no property, except that represented by the real estate on which its Exchange building is constructed. The value of its shares is nominal, and depends entirely upon the privilege of membership. It has no means or revenue, out of which taxes on the shares can be paid, being supported only by voluntary contributions in the shape of annual dues from its *members*. Not being a monied corporation, it does not come within the purview of the invoked Act of 1880.

The mode which this Act provides for the payment of the tax by the corporations embraced within the section, is: "that the taxes so assessed (to the shareholders) shall be paid by the bank, company, firm, association or corporation, which shall be entitled to collect the amounts from the shareholders or their transferrees." It is destructive of defendants' theory.

The corporation is distinct from its stockholders, as concerns the ownership of property. If the corporation could be legally made liable for the debts of its stockholders, then, constitutionally, the property of one citizen could be legally subjected, independent of any contract, to the debts of another. This cannot be done.

The taxes on the shares would, in less than three years, surely within a few, amount to such figure and require such property for satisfaction, that the real estate and building with all its appurtenances owned by the corporation would soon be absorbed, and the whole organization destroyed and converted into less than nothingness. As was well observed by a French economist:

"Taxes levied by the sovereign on his people, should be like the light vapors which the Sun extracts from the Earth, to be returned to it, in fertilizing dews."

The object of taxation is preservation and not destruction and annihilation.

We therefore conclude, on this branch of the case, that it did not enter in the legislative mind to include corporations of the class, to which the plaintiff belongs, among those mentioned in the act invoked, and that the assessment made of the shares of the plaintiff corporation was, as charged, unauthorized, and is therefore illegal, null and void.

### III.

This view of the case renders it unnecessary to pass upon the third question presented, namely: the validity of the assessment, as made, for it matters not how regularly the listing may have been effected, if the assessment be illegal, the listing must be so likewise, and necessarily share the same fate.

It is, therefore, ordered and decreed that the judgment appealed from be reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, annulling, to all ends and purposes and as prayed for, the assessment of shares mentioned in the petition, defendants to pay costs in both Courts.

### CONCURRING OPINION.

FENNER, J. I find no necessity for, or propriety in, holding that the plaintiff corporation did not fall within the legislative *intent*, as expressed in the broad and unrestricted terms of Act No. 77 of 1880.

I fully concur, however, in the decree, upon the ground sufficiently indicated and enforced in the opinion, that, whatever the legislative *intent*, it did not lie within the legislative *power* to make a corporation of this character liable for taxes avowedly levied upon, and due by its stockholders alone and as independent persons.