FARMERS' AND TRADERS' NATIONAL BANK v. CHAS. V. HOFFMANN, Treasurer of Mahaska County, Appellant.

**Taxation: National Bank Stock** can not be assessed as the personal property of the bank without listing or mention of the shareholders. Code, 819.

SAME. Code, 819, provides that banks shall be liable for the tax as agent of the holder and that they "shall retain so much of the dividend belonging to any shareholder" as shall pay share taxes levied. *Held*, there is no liability unless the bank has or since assessment has had money or property of the shareholder, set apart to him as a dividend or otherwise designated as his property, and there is no such holding when no dividend has been declared for a year before assessment and a surplus reported after the assessment is extinguished by shrinkage of securities composing it.

ESTOPPEL. The fact that a bank has for years past paid share taxes levied against it as personal property, does not estop it to resist the collection of such a tax, when it has no money belonging to the holders.

*Appeal from Mahaska District Court.*—HON. A. W. WILKINSON, Judge.

WEDNESDAY, DECEMBER 19, 1894.

This is an action in equity by which the plaintiff seeks to enjoin the collection of certain taxes. The defendant Hoffman was treasurer of the county at the time of the commencement of the suit. There was a hearing on the merits, and a decree was entered for the plaintiff. Defendants appeal.—*Affirmed.*

*Byron W. Preston* for appellants.

*L. C. Blanchard* and *Seevers & Seevers* for appellee.

Rothrock, J.—I.   The taxes in question were assessed and levied in the year 1891.   The plaintiff at that time was a bank organized under the national banking law.   The capital stock of the bank was one hundred thousand dollars, which was divided into shares of one hundred dollars each.   The stock was owned by a number of persons, some of whom resided in Mahaska county, some in other counties in this state, and others were nonresidents of the state.   When the assessor appeared at the bank, in performance of his duty as assessor, he had an interview with the cashier, which resulted in an assessment of forty thousand dollars.   This was afterward raised by the board of supervisors to fifty thousand, so that, when the assessment was placed on the tax books, it appeared thus:

| Name. | Value of Personal Property. | Total Value of All Property. | Consolidated Tax. | Water. | Total Tax. |
|---|---|---|---|---|---|
| Farmers' and Traders' Bank. | $50,000 | $50,000 | $1,425 1,425 | $125 125 | $1,550 1,550 |

It is conceded that the assessor did not intend to assess any property of the bank, but his purpose was to assess the capital stock to the amount of forty per cent. of its par value. As the tax was assessed and placed on the books, it appeared to be a tax against the bank upon "personal property," of which it was the owner, and not against the stockholders. No mention was made of the stockholders, either generally or by name, and there is nothing of record in the way of assessment, levy, or tax books showing that there was any intention or purpose to levy a tax against any person other than the bank as a corporation. This was, upon the face of the transaction, a void assessment and levy. Section 819 of the Code expressly requires that the shares of the bank shall be assessed, and that the principal accounting officers shall give the assessor "the name of each person owning shares, and the amount owned by each." This is a plain requirement of the statute. It is true that there is oral evidence to the effect that the intention of the assessor was to assess the shareholders by an assessment against the bank. But the evidence shows quite satisfactorily that, when the assessment was made, the cashier of the bank offered to furnish to the assessor a list of the shareholders, showing the number of shares held by each person. The assessor did not receive the list as offered, and made out the amount assessed against the bank, and requested the cashier to sign it, which he did.

The reason of the requirement that the taxes shall be assessed and levied against the stockholders is obvious. A stockholder in a national bank cannot be taxed upon his stock at a greater "rate than is assessed on other moneyed capital in the hands of individuals." Code, section 818. This authorizes the stockholder to deduct from the cash value of his stock the amount of his valid debts. Code, section 814; *First Nat. Bank v. City Council of Albia*, 85 Iowa, 736, 52 N. W. Rep. 334; *People v. Weaver*, 100 U. S. 539.

II.   After this suit was brought, the auditor of the county made two alterations or claimed corrections in the tax book. One was the interlineation or addition of the word "National," so that the name of the bank was corrected to read "Farmers' & Traders' National Bank." The other addition was the words "Agent for Shareholders on Shares in Said Bank;" so that the tax books, as altered, showed that the tax was against the plaintiff as agent for the shareholders. A question involved is whether this alteration was legally made, or, rather, whether it was within the lawful power or authority of the auditor to make it. We do not think it necessary to determine that question. Nor do we believe that the alteration in any manner affected the rights of the parties.   It was an attempt to assert a right to collect the tax of the plaintiff as agent of the stockholders. It is true that it is provided by statute that, after the stock is assessed and taxed to the stockholder, "the banking association shall be liable to pay the same as the agent of each of its shareholders under the provisions of section eight hundred and seventeen; and the association shall retain so much of any dividend belonging to any shareholder as shall be necessary to pay any taxes levied upon his shares." Code, section 819. The bank is not absolutely liable for the taxes upon shares, but, to ren-

der it liable, it must be shown that it has or has had
dividends or other money or property belonging to the
delinquent shareholder. *Hershire v. Bank*, 35 Iowa,
272. The alteration in the tax book made by the
auditor during the pendency of this suit was of no avail,
because, if it be considered an assessment against the
stockholders or against plaintiff as agent, it was incumbent on the defendants, in any event, to show that the
plaintiff had dividends or other money or property
belonging to the stockholders. A most determined
effort was made in the court below to show that fact.
The following is part of the findings of fact by the court:
"The last dividend declared by the plaintiff bank was
declared in December, 1890, and was paid to the shareholders January 13, 1891. The assessment under consideration was not made until some time thereafter,
and the taxes did not become due thereon until about
one year thereafter. At the time such dividend was
declared, the said bank had a surplus fund of several
thousand dollars, which was afterward absorbed and
extinguished by the shrinkage of securities and assets
held by said bank. During the summer of 1891, the
plaintiff bank went into voluntary liquidation, and
ceased to do business as a national bank; and, since
these taxes became due, it is very doubtful whether
this bank has had money of the shareholders with
which it might have paid the taxes so levied and
assessed." Our examination of the evidence leads us
to the belief that the above findings are correct.
Indeed, we do not believe that we would be justified in
finding that the appellee had, at any time after the
assessment was made, in its possession or under its control, any money or property belonging to the stockholders which was available to apply in payment of
this tax. It is true that, after that, the bank, by its
reports, showed assets above its liabilities; but when it

went into liquidation, soon after the assessment was made, it appeared that a very large part of its assets were worthless securities, which had accumulated from time to time during the period of existence of the bank as a national association. All the evidence on that subject shows that it was not a successful moneyed institution. The cashier of the bank testified in part as follows: "The bank declared no dividend since December, 1890. We declared dividends the year before, payable January, 1890. We skipped one, the year before that. In speaking about this bank having a surplus on hand, that kind of a surplus consists of notes and discounts which we naturally had to consider as good. There has been a large shrinkage of values sufficient to almost wipe out the surplus. On a fair array of the assets of the bank, there would be little or nothing left for the stockholders. The stockholders did not get any more than the value of their stock. The shrinkage in values ate up the accumulated earnings." The obligation of the bank to pay the taxes does not require it to apply any of its funds to make such payment except such as may be fairly held to be the money or property of the stockholder, either set apart to him as a dividend or otherwise designated as his property.

III. The assessor who made this assessment had held that office for about ten years. He did not at any time make any assessment against the shareholders, as required by law. The bank made no objection to this method of assessment, but paid the taxes for the several years, down to that now in controversy. Much of the argument of counsel is based upon the claim that the plaintiff is estopped from now making any resistance to the payment of this last levy. We discover no reason for applying the doctrine of estoppel to the state of facts here disclosed. As we have said, the obligation of the bank to pay is founded on the

law which requires payment to be made by the bank by applying the money or property of the stockholders to that purpose. If it has no such money or property, it cannot be required to pay, because it paid taxes for previous years.

The case demands no further consideration. The decree of the District Court is *affirmed*.