(78 South. 169)

No. 21038.

In re FELICIANA BANK & TRUST CO.

(Feb. 25, 1918.)

1. TAXATION ⟜11—BANKS—CAPITAL STOCK.

The legislation in this state respecting the taxation of banks is based upon and is responsive to the federal legislation permitting the taxation by the state of shares in national banks which, because of their character as governmental agencies, would not otherwise be subject to such taxation; and the object and effect of this legislation was to enable the state to reach for taxing purposes the capital of banks as the property of its stockholders, thus placing the burden of state taxation equally upon national and state banks.

2. TAXATION ⟜522 — BANKS — SHARES OF STOCK—LIABILITY.

The tax prescribed by Act No. 170 of 1898, § 27, is on the shares of the bank as the property of its shareholders, and the liability for the tax is that of the shareholders, and not of the bank, which, under the statute, is constituted merely the agency or instrumentality through which the tax is collected; its duty or obligation being simply to pay the tax out of the means or property of the stockholders in its possession—a method of collection supplementary and not exclusive of the ordinary means available for the collection of taxes upon movables.

3. TAXATION ⟜522 — BANKS — CAPITAL STOCK—APPRAISEMENT.

Since the amount of the tax against the shareholders of a bank under the statute is dependent upon the valuation placed upon their shares by the taxing authorities, it is manifest that until this appraisement, that is, assessment, is completed and the amount of the tax thereby ascertained, no authority or duty devolves upon the bank, as agent, to appropriate or apply any property or funds of its shareholders to the payment of the tax.

4. TAXATION ⟜522 — BANKS — CAPITAL STOCK—ASSESSMENT.

As relates to the function, liability, or authority of a bank, in its capacity as agent, for the payment of the tax upon its shareholders and their shares under the statute, an assessment is completed and the amount of the tax ascertained only upon the deposit of the tax rolls by the assessor. And this is true notwithstanding that the completed assessment, in so far as the direct liability of the stockholders and their shares is concerned, may perhaps relate back to the 1st day of January of the tax year.

5. TAXATION ⟜522 — BANKS — CAPITAL STOCK—RECEIVERSHIP.

A proceeding by the state against the liquidator of an insolvent bank for the collection

of the taxes assessed against its shareholders and their shares under the statute cannot be maintained, where it is neither alleged nor proved that the liquidator has, or that the bank had at the time of the deposit of the assessment rolls or on the date of its insolvency, any assets belonging or accruing to the shareholders.

Monroe, C. J., and O'Niell, J., dissenting.

Appeal from Twenty-Fourth Judicial District, Parish of West Feliciana, J. L. Golsan, Judge, to Court of Appeal, First Circuit, there transferred to Supreme Court.

In the matter of the liquidation of the Feliciana Bank & Trust Company. Rule by John H. Clack, Sheriff and ex officio Tax Collector of the Parish of West Feliciana, on the liquidator to collect taxes on the capital stock, surplus, and undivided profits, with interest from date of delinquency. Rule made absolute in the district court, and the liquidator appealed to the Court of Appeal, which declined jurisdiction and transferred the case to the Supreme Court. Judgment reversed, and decree that the rule be dismissed.

T. Jones Cross, of Baton Rouge, for appellant. Lawrason & Kilbourne, of St. Francisville (A. V. Coco, Atty. Gen., and Harry P. Gamble, Asst. Atty. Gen., of counsel), for appellee.

In this case, his honor, Mr. Justice LECHE being recused, and their honors being evenly divided in opinion as to the proper determination to be made of the issues involved, Judge EMILE GODCHAUX of the Court of Appeal, Parish of Orleans, having been called upon by previous order of this court to sit in the case, pronounced the judgment of the court therein in words and figures as follows, to wit:

The tax collector is seeking to collect from the liquidator of the Feliciana Bank & Trust Company, an admittedly insolvent state bank now in process of judicial liquidation in this proceeding at the instance of the state bank examiner, the taxes for the year 1913, imposed pursuant to section 27 of Act 170 of 1898, which, so far as presently pertinent, prescribes:

"That no assessment shall hereafter be made under that name, as the capital stock of any national bank, state bank, banking company, etc., whose capital stock is represented by shares, but the shares shall be assessed * * * to the shareholders, who appear as such upon the books; * * * and all taxes so assessed shall be paid by the bank, * * * which shall be entitled to collect the amount from the shareholders," etc.

The defendant resists payment on the ground that the tax is an obligation, not of the bank, but of the shareholders, which the bank is required to pay merely as the agent of the shareholders when it has funds or property belonging to them in its possession; and that it cannot be made to pay this tax, because the bank had not at the time when the tax was imposed, nor when the bank went into liquidation, and because the liquidator has not now, any funds or property whatever belonging or accruing to the stockholders, the total assets of the bank at all such times and presently being insufficient to discharge its obligations to its creditors.

This appeal from a judgment condemning the liquidator to pay the tax from the assets of the defunct bank presents primarily the question of whether the tax is imposed upon the bank or upon its shareholders, and if upon the latter, then a determination of the function and duty of the bank with relation to the payment of the tax.

[1] 1. It will be noted that the statute requires that no assessment shall be made of the capital stock of any national or state bank, but that the shares shall be assessed to the shareholders. This special provision of our statute of 1898, applicable to banks alone, first appeared, substantially in the same form, in Act No. 8 of 1878, Ex. Sess. § 1, par. 8, and has repeatedly been incorporated in the subsequent revenue laws of the state, namely, Act 77 of 1880, § 48, Act

96 of 1882, § 28, Act 98 of 1886, § 28, Act 85 of 1888, § 27, and Act 106 of 1890.

This system of assessment or taxation with respect to banks, inaugurated at or about the same time in nearly every state of the Union, was manifestly based upon and responsive to the federal legislation of 1864 and 1868 (United States Rev. Stat. § 5219 [U. S. Comp. St. 1916, § 9784]), which expressly permitted the taxation by the states of the shares of national banks, governmental agencies, which but for this permissive legislation would not have been subject to any taxation by the state.

Construing a statute of Kentucky, similar to this, it has been said:

"But it is argued that the banks, being instrumentalities of the federal government, by which some of its important operations are conducted, cannot be subjected to such state legislation. It is certainly true that the Bank of the United States and its capital were held to be exempt from state taxation on the ground here stated, and this principle, laid down in the case of McCulloch v. Maryland [4 Wheat. 316, 4 L. Ed. 579], has been repeatedly affirmed by the court. * * *

"If the state of Kentucky had a claim against the stockholder of the bank * * * it could undoubtedly collect the claim by legal proceeding, in which the bank could be attached or garnished, and made to pay the debt out of the means of its shareholder under its control. This is, in effect, what the law of Kentucky does with regard to the tax of the state on the bank shares."

National Bank v. Commonwealth, 9 Wall. 353, 19 L. Ed. 701.

And this court, construing Act 8 of 1878, Ex. Sess. § 1, par. 8, has noted this change in our state tax laws, which prior thereto had taxed the capital of banks (Act 68 of 1870, Ex. Sess. § 1; Act 42 of 1871, § 1, subd. 8), and has recognized the purpose and effect of such legislation:

"The difference between this statute and former revenue laws is simply in the mode of taxing the same thing. Heretofore, the capital was assessed against the bank. Under this act, it is assessed against its stockholders. There is no double taxation here; for, as we have seen, when the capital is assessed to the shareholders, it is not assessable against the bank. * * *

"It may not be amiss to add that the shares are assessed to the stockholders individually, and it may well be doubted whether the bank can disturb an assessment made against them. * * *

"The real object of the change of method is manifest. Under the laws of the United States, the capital stock of the national banks is exempt from taxation by any state or municipal authority; but the shares of the stockholders in such banks are thought to be taxable.

"The purpose and effect, therefore, of the act of 1878, were, in reality, to lessen the burdens of taxation on the state banks, and other property holders of the state, by compelling the stockholders of the national banks to contribute to the expenses of the government, whose protection they enjoy."

City v. Canal & Banking Co., 32 La. Ann. 157.

And it may here be observed that, in addition to relieving state banks from the disadvantage of a burden of taxation that competing national banks did not theretofore bear, the statute, by taxing the shares, enabled the state to reach for the purposes of taxation the investment of banks in governmental securities, both state and national. First National Bank v. Board, 41 La. Ann. 181, 5 South. 408.

[2] 2. The cases cited, all holding that the tax is on the shares as the property of the shareholders, and that the liability for the tax rests upon the shareholders and not upon the bank, accord with the uniform jurisprudence of this court, which moreover establishes, with equal uniformity, that the bank, under the statutes, is constituted merely the agency or instrumentality through which the tax is collected; its duty being simply to pay the tax out of the means or property of the stockholders in its possession.

In Bank v. Bouny, 32 La. Ann. 239, in considering Act 8 of 1878, Ex. Sess. § 1, par. 8, in connection with the peculiar provisions of the charter of the Citizens' Bank, the court said:

"Where the capital, assets, and profits of a bank are at the disposal of its shareholders, the state may perhaps compel the bank to pay their taxes on stock. But such legislation with reference to the Citizens' Bank would be violative of the vested rights of others."

The next revenue statute (Act 77 of 1880) extended this method of taxation so as to embrace other corporations as well as banks, and was considered in a case wherein the Cotton Exchange· successfully enjoined the attempt to collect from it the tax levied upon the shares of its shareholders under section 48 of the statute; its contention, which was sustained, being that the tax did not apply to a nondividend-paying corporation, and that such a corporation, having no property of the stockholders at its disposal, could not be made to pay the tax on the latter's behalf. Upon the latter point, the concurring opinion of Justice Fenner was to this effect:

"Whatever the legislative intent, it did not lie within the legislative power to make a corporation of this character liable for taxes avowedly levied upon, and due by its shareholders alone, and as independent persons."

And in the opinion of the court, delivered by Chief Justice Bermudez, we find:

"The actual shares shall be assessed to the shareholders, and that 'all the taxes so assessed shall be paid by the corporation, which shall be entitled to collect the amounts from the shareholders or their transferees.' Section 48.

"The validity of such mode of assessment and of collection was attacked, but the Supreme Court of the United States has in two cases maintained the same, for the reason that the corporation was made to pay 'out of the means of the stockholder under its control,' and did so by withholding the assessment out of the dividends. 9 Wall. 362 [19 L. Ed. 701; Delaware Railroad Tax] 18 Wall. 230 [21 L. Ed. 888]. * * *

"The mode which this act provides for the payment of the tax by the corporations embraced within the section is: 'That the taxes so assessed (to the shareholders) shall be paid by the bank, company, firm, association or corporation, which shall be entitled to collect the amounts from the shareholders or their transferees.' It is destructive of defendants' theory.

"The corporation is distinct from its stockholders, as concerns the ownership of property. If the corporation could be legally made liable for the debts of its stockholders, then, constitutionally, the property of one citizen could be legally subjected, independent of any contract, to the debts of another. This cannot be done."

Cotton Exchange v. Board, 35 La. Ann. 1154.

Under the general revenue act of 1886 (section 28 of Act 98 of 1886) it was held:

"In suits to reduce and annul assessments of shares of capital stock to the shareholders in a corporation, it is unnecessary to join the shareholders in the suit. Section 28, of Act 98 of 1886, constitutes the corporation the agent of the shareholders for the purpose of assessment, and the payment of the tax assessed." Planters' Co. v. Assessor, 41 La. Ann. 1137, 6 South. 809.

And precisely the same ruling was made by the federal District Court of this circuit. Whitney National Bank v. Parker (C. C.) 41 Fed. 402.

Again, dealing with the assessment of banks under the same statute, this court has said:

"There can be no question that the tax from which exemption is claimed is not a tax on the capital of the bank; but it is a tax on the shares because the statute expressly declares" so. First National Bank v. Board, supra.

Substantially the same language was used in construing the revenue law of 1888 (Act 85 of 1888, § 27):

"The tax is levied, not on the capital or stock of the corporation, but on the shares as the property of the individual shareholders. Such is the express language of the law." Board v. Thoman, 42 La. Ann. 605, 8 South. 482.

To like effect with respect to the same statute is Home Insurance Co. v. Board, 42 La. Ann. 1131, 8 South. 481.

And regarding section 27 of the next revenue law (Act 106 of 1890), it was held:

"As the mere agent of the shareholders, for paying the tax, the bank's interest in the mere mechanical arrangement of the assessment is very remote." Castles v. City, 46 La. Ann. 542, 15 South. 199.

The provision in question of the present revenue law (section 27 of Act 170 of 1898) was before this court in another Citizens' Bank Case. Having heretofore been denied the right to collect such a tax from this bank as the agent of its stockholders (Bank v. Bouny, supra), the taxing authority endeavored to secure payment from the stockholder him-

self; but this court,* Justices Nicholls and Monroe dissenting, held that the charter exemption of the bank was broad enough to exempt the stockholders and their shares from such taxation. Penrose, City Tres., v. Chaffraix, 106 La. 250, 30 South. 718.

Still more recently, in a case involving an attempted taxation of Stock Exchange shares, it was stated:

"The first contention of plaintiffs is that the shares of no corporation, except banking concerns, are assessable for taxation under the present revenue laws of the state, and that all other corporations are assessable upon all their taxable property. Sections 27 and 28, Act No. 170, pp. 362, 363, of 1898. * * *

"These sections show radical differences between the assessment of banking corporations and that of all other corporations. In the first place, an incorporated bank is not taxable on its assets other than real estate, while all other corporations are taxed on all their property, movable and immovable, corporeal and incorporeal.

"In the second place, the shares in banks are taxed against the individual shareholders, while no mention is made of shares in the sections providing for the taxation of other corporations. * * *

"The single exception of real estate proves the intent of the lawmaker not to tax the shareholders and the corporation on the same values, because provision is made for the deduction of the assessed value of real estate from the assessed value of the shares. * * *

"In New Orleans Cotton Exchange v. Board, 35 La. Ann. 1154, it was held by a majority of the court, the Cotton Exchange was not a money-making and dividend-paying corporation, as contemplated by Act No. 77, p. 88, of 1880, and could not be charged with the payment of taxes assessed against its shareholders." Chassaniol v. Board, 120 La. 777, 45 South. 604.

See, also, Allgeyer v. Board, 121 La. 149, 46 South. 134.

And, finally, while on the subject of the Louisiana cases, it is here pertinent to remark that the method of the collection of the taxes through the bank, as agent, is not exclusive, but merely supplementary to the ordinary means which the state under the statute has at its disposal for the collection of taxes against other individuals. For the statute expressly provides that in the event that the tax cannot be collected through the bank, as agent, then the shareholder may be proceeded against "by rule to produce, and all other proceedings provided for in this act for the collection of taxes on movable property." Act No. 170 of 1898, § 27.

And the decisions of the court furnish at least one instance wherein the state had recourse to the ordinary method of collection against the stockholder himself by impounding his property in the hands of the corporation. Parker v. Sun. Insurance Co., 42 La. Ann. 1172, 8 South. 618.

It will thus be seen that, by an unbroken line of consistent adjudications it has been firmly established in this state that the tax is on the shares and the shareholders, not on the bank or its property; and that under the statutes, the bank is designated merely as the agency or instrumentality through which this tax is to be paid; from the means, funds, or property of the stockholders in its possession—an interpretation of the statute universally upheld in every jurisdiction where this method of taxation with respect to banks has been enacted. The number of cases is overwhelming, but the more pertinent are as follows: Charleston Nat. Bank v. Melton (C. C. W. Va.) 171 Fed. 743; First Nat. Bank v. Commonwealth of Kentucky, 9 Wall. 353, 19 L. Ed. 701; Cummings v. Mer. Nat. Bk., 101 U. S. 153, 25 L. Ed. 904; Lionberger v. Rowse, 9 Wall. 468, 19 L. Ed. 721; Hager v. Am. Nat. Bk. (Ky.) 159 Fed. 396, 86 C. C. A. 334; First Nat. Bank of Aberdeen v. Chehalis County, 166 U. S. 440, 17 Sup. Ct. 629, 41 L. Ed. 1069; Merchants' Nat. Bank v. Penn., 167 U. S. 461, 17 Sup. Ct. 829, 42 L. Ed. 236; Whitney Nat. Bank v. Parker (C. C.) 41 Fed. 402; Citizens' Nat. Bank v. Kentucky, 217 U. S. 443, 30 Sup. Ct. 532, 54 L. Ed. 832; Batesville First Nat. Bank v. Board, 92 Ark. 335, 122 S. W. 988; Commonwealth v. Citizens' Bank, 117 Ky. 946, 80 S. W. 158; Relfe v. Col. Life Ins. Co., 11 Mo. App. 374–377; First Nat. Bank v. Meredith, 44 Mo. 500; Farmers' & Traders' Bk.

v. Hoffmann, 93 Iowa, 119, 61 N. W. 418; Baker v. King County, 17 Wash. 622, 50 Pac. 481; Stapylton v. Thaggard, 91 Fed. 93, 33 C. C. A. 353; Shainwald v. First Nat. Bk., 18 Idaho, 295, 109 Pac. 257; Hershire v. First National Bk., 35 Iowa, 272; Jefferson County Sav. Bk. v. Hewitt, 112 Ala. 546, 20 South. 926; State v. Carterville Bk., 180 Mo. 717, 79 S. W. 943; Bressler v. Wayne County, 82 Neb. 758, 118 N. W. 1054; Truby's Appeal, 96 Pa. 52; Union Bank v. Richmond, 94 Va. 316, 26 S. E. 821.

[3-5] 3. Since the amount of the tax against the shareholders of a bank is dependent upon the appraisement or estimate made of the value of their shares by the taxing authorities, it is manifest that until this appraisement, that is, assessment of the shares, is completed and the amount of the tax thereby ascertained, no authority or duty devolves upon the bank, as agent, to appropriate or apply any property or funds of the shareholders in its possession to the payment of the tax.

Under Act 170 of 1898, § 1, the tax levied is "six mills on the dollar of the assessed valuation of all property," and the method provided by the statute for making the annual valuation or assessment of property (other than in the parish of Orleans) is this:

The assessor must prepare by June 1st his listing and appraisal of all property (section 22); and these estimative lists are thereafter submitted for approval or disapproval by the police jury, which must meet as a reviewing board on the 1st Monday in July (section 24). As fast as the approval of the police jury is obtained, the assessor is required to prepare from these "lists" and to deposit in the offices of the clerk of court, the tax collector and the auditor, respectively, three (3) "tax rolls," said deposit being the tax collector's warrant "to collect all taxes" (section 30), and constituting "prima facie evidence" and "full notice to each taxpayer that the listing, assessment and valuation has been completed" (sections 34 and 35). And though perhaps immaterial here, it may be added that the language of the statute prescribes that the taxes shall be due and the lien thereof attach as soon as the tax rolls are thus deposited (sections 40 and 71).

From the transcript herein it appears that the tax rolls were not deposited by the assessor until October, 1913, and consequently it was not until then that the valuation or assessment was complete according to the specific declarations of the statute. It is as of that date that the liability of the bank, as agent, for the payment of the tax must be gauged. In so far as the liability of the stockholder and his shares are concerned, a completed assessment perhaps relates back to the 1st day of January, but as to the bank, in its capacity as agent, its duty in the premises necessarily dates only from the time that the amount of the tax is determined.

But there is neither pleading nor proof in the record that the bank or its liquidator had in hand in October, 1913, any fund whatever belonging or accruing to the stockholders. To the contrary, it is admitted that the bank was forced into liquidation in August of that year because of its insolvency, and from the statement of counsel upon the argument of the case, we entertain no doubt that the bank's entire capital and surplus had vanished, and that its remaining assets would not liquidate the bank's outstanding debts to its depositors and creditors. This proceeding, therefore, to recover from the bank or its liquidator the tax imposed upon the shares of its stockholders, cannot be maintained.

For, as we have noted, this court, as early as 1880, has held that a bank, as agent, was free from any responsibility or liability for the tax, where its charter contract places the avails of the stockholders beyond its control or disposal (Bank v. Bouny, 32 La. Ann. 239); while again, in 1883, it has held, in a decision which has been cited with approval

as recently as 1908 (Chassaniol v. Board, 120 La. 777, 45 South. 604), that a corporation without funds or property of stockholders in its hands could not, in its capacity as agent, be condemned for the tax (Cotton Exchange v. Board, 35 La. Ann. 1154).

The federal court, in interpreting the Massachusetts statute, has held:

"That no suit for this tax can be maintained against the receiver of an insolvent national bank where the property represented by the shares has disappeared; for, there being nothing from which the receiver can be reimbursed, the tax will fall upon the assets of the bank, which belong to its creditors, and thereby violate the rule that a state cannot tax the capital stock of a national bank." City of Boston v. Beal (C. C.) 51 Fed. 306, affirmed in 55 Fed. 26, 5 C. C. A. 26.

And this language was quoted with approval by the Supreme Court of Washington in Baker v. King County, 17 Wash. 622, 50 Pac. 481.

Again, the federal Court of Appeals of this circuit, Judges Parlange and Pardee participating, has ruled:

"The case made by the bill, showing the insolvency of the bank and the appointment of a receiver, is one which releases the receiver and any assets in his hands from liability to pay the tax. See Rosenblatt v. Johnston, 104 U. S. 462 [26 L. Ed. 832]. As we construe the cases, from First Nat. Bank v. Commonwealth, 9 Wall. 353 [19 L. Ed. 701], to First Nat. Bank v. Chehalis Co., 166 U. S. 440 [17 Sup. Ct. 629, 41 L. Ed. 1069], the bank is made to pay the taxes assessed by the state against its shareholders, when the state statutes lay such duty upon the bank, upon the theory that the shares are valuable, and that the bank has assets in its hands belonging to the shareholders from which it can recoup. Where a bank is insolvent, and has passed into the hands of a receiver, the shares are generally worse than worthless; and the receiver has no assets belonging to the shareholders which can be applied to the payment of taxes assessed on shares.

"In such case, we are of opinion that the tax assessed against the shares * * * cannot be collected from the receiver, or from assets in his hands. The case of City of Boston v. Beal (C. C.) 51 Fed. 306, is directly in point; the Massachusetts statute being substantially the same as the statute of Florida in providing that the shares shall be assessed to the owner, and the tax paid by the bank." Stapylton v. Thaggard, 91 Fed. 93, 33 C. C. A. 353.

Particularly pertinent is the language of the Supreme Court of Iowa:

"To render, under our statute, * * * a national bank, organized under the federal banking law, liable for the payment of taxes due from its shareholders, it must be averred and shown that the bank now has or has had in its possession dividends or other money or property belonging to the delinquent shareholder. The bank is not absolutely liable, independent of such showing." Hershire v. First Nat. Bank, 35 Iowa, 272, followed in Farmers' & Traders' Bank v. Hoffmann, 93 Iowa, 119, 61 N. W. 418.

See, also, Shainwald v. First Nat. Bank, 18 Idaho, 295, 109 Pac. 257, and Relfe v. Columbia Life Ins. Co., 11 Mo. App. 374.

The judgment is accordingly annulled, and reversed, and it is now decreed that the rule herein of John H. Clack, sheriff and ex officio tax collector of the parish of West Feliciana, be dismissed at mover's costs in all courts.

Reversed.

See dissenting opinion of O'NIELL, J., in which MONROE, C. J., concurs, 78 South. 174.