(May 27, 1910.)

## EDWARD SHAINWALD, Appellant, v. FIRST NA-TIONAL BANK OF WEISER, Respondent.

[109 Pac. 257.]

TAXATION OF BANK STOCK—PAYMENT OF TAX BY BANK—LIEN OF BANK FOR REIMBURSEMENT.

(Syllabus by the court.)

1. Under the statute of this state (sec. 1672, Rev. Codes) the shares of stock in banks must be assessed against the owners of such stock and the tax thereon must be paid by the bank. The lia-bility on the part of the bank under this statute to pay the taxes assessed against the stock carries with it an implied lien in favor of the bank and against the stock and the earnings, dividends and profits derived therefrom for reimbursement in the sum so paid.

2. The claim and demand of a bank for reimbursement for moneys paid as taxes on the shares of stock held by its shareholders follows and attaches to the stock and its earnings, profits and divi-dends, irrespective of any sale or transfer which may be made of such stock.

3. Where S. sold his shares of stock in a national bank subse-quent to the date on which taxes attach for the year and prior to the payment of such taxes by the bank, the bank cannot thereafter:

pay over the earnings and dividends from the stock to the purchaser of such stock and then maintain a personal action against the vendor of the stock for recovery of the taxes so paid subsequent to the sale and transfer of the stock.

4. Where a bank pays the taxes against the shares of stock owned by its stockholders, it cannot lawfully charge the same up against the aggregate earnings of the bank as current expense or otherwise, but must charge the amount paid against the shares of stock on which such payment was made or against the present owner of such stock.

APPEAL from the District Court of the Seventh Judicial District, for the County of Washington.    Hon. Ed. L. Bryan, Judge.

Action to recover from a stockholder taxes paid by the bank subsequent to the sale of such stock by the stockholder.    Judgment for the plaintiff and defendant appealed.    *Reversed.*

Ed. R. Coulter, for Appellant.

The gist of sec. 1672, Rev. Codes, is that the stock must be assessed in the name of the stockholders, the bank must furnish the assessor with a list of its stockholders and the number of shares held by each, and the bank must pay the tax.    The law is silent as to how the bank and its stockholders fix up the matter between them.    The law does not care so long as it is equitably adjusted.    (*First National Bank v. Kentucky,* 9 Wall. (U. S.) 353, 19 L. ed. 701.)

These statutes (and nearly every state in the Union has the same mode of collecting taxes on bank stock) were drawn on the theory that the bank has dividends and property belonging to the stock out of which it can reimburse itself for the taxes paid on the shares.    (2 Cooley on Taxation, 3d ed., p. 832; *Stapylton v. Thaggard,* 91 Fed. 93, 33 C. C. A. 353; *Knoxville Traction Co. v. McMillan,* 111 Tenn. 521, 77 S. W. 665, 65 L. R. A. 296; *First Nat. Bank v. Peterborough,* 56 N. H. 38, 22 Am. Rep. 418; *N. C. Ry. Co. v. Commrs.,* 91 N. C. 454; *Mechanics' Nat. Bank v. Baker,* 65 N. J. L. 113, 46 Atl. 586; 1 Am. & Eng. Ency. of Law, 1119; 31 Cyc. 1541.)

B. S. Varian, for Respondent.

The Idaho statute is silent as to the manner in which a bank is to be reimbursed for taxes paid by it for its shareholders. The whole theory of our law points to the conclusion that the bank has the right to apply directly to the stockholder for reimbursement. (Secs. 1653, 1672, Rev. Codes.) The state has the right to make national banks its agents to collect the taxes on their shares from the individual shareholders. (*Bank v. Pennsylvania*, 167 U. S. 461, 17 Sup. Ct. 829, 42 L. ed. 236, and cases cited.)

The bank, having no lien upon the shares of its stockholders for the amount of taxes paid by it, could not follow the stock in the hands of third persons, in seeking reimbursement for taxes paid for a stockholder. (*Palmer v. Pettingill*, 6 Ida. 346, 55 Pac. 653; *Bank v. Lanier*, 11 Wall. 369, 20 L. ed. 172; *Bullard v. Nat. Eagle Bank*, 18 Wall. 589, 21 L. ed. 923.)

The deductions under sec. 1683 are allowed to each stockholder separately against the stock held by him individually. The credit or offset is a personal right of the stockholder and cannot be claimed by the bank. One stockholder cannot be allowed deductions for indebtedness of another stockholder. (*First Nat. Bank v. Washington Co.*, 17 Ida. 306, 105 Pac. 1053.)

A careful reading of the authorities cited to sustain appellant's position will disclose that in practically every instance the statute authorizing the taxation of bank stock provides that the bank shall have a lien upon the dividends for the payment of the taxes advanced by it. These cases are all suits brought by the state, or its tax collectors, to collect the taxes due the state, and are not in point here.

AILSHIE, J.—This action was instituted by the First National Bank of Weiser against Edward Shainwald to recover the sum of $441.40, principal and interest paid by the bank to Washington county as taxes for the year 1908, levied and assessed against 183 shares of the capital stock of the bank. It is alleged by the complaint that on the second Mon-

day in January, 1908 (the date on which the tax lien attaches under the laws of this state), the defendant was the owner of 183 shares of the capital stock of the plaintiff bank, and that the plaintiff listed the shares of such stock for taxation for the year 1908 in conformity with the requirements of the statute of this state (sec. 1672, Rev. Codes). It is further alleged that thereafter and on the first day of January, 1909, the plaintiff bank, acting under authority and direction of the statute of the state (sec. 1672, Rev. Codes), paid the taxes levied and assessed against defendant's stock, and that he has neglected and refused to reimburse the bank in the sum thus laid out and expended. The defendant answered the complaint and admitted that he owned the stock mentioned and described in the complaint on the second Monday in January, 1908, the date on which the taxes attached for that year. He alleges that thereafter and in the month of June, 1908, he sold, assigned and transferred all his stock to one A. H. Keller, who is now, and ever since such sale has been, the cashier of the plaintiff bank.

It is also alleged by the answer that subsequent to the date of the sale and transfer of defendant's stock and prior to the first day of January, 1909, the date on which the taxes were paid by the bank, that the bank paid to Keller, the purchaser of the stock, earnings and dividends of and from such stock in an amount larger than and in excess of the sum thereafter paid by it as taxes on such stock; further, that at the time of the payment of the taxes the bank had in its possession of the earnings and surplus belonging to the stock formerly owned by the defendant and then owned by Keller a sum larger than and in excess of the amount which it paid as taxes on such stock. It is also alleged that the bank was a solvent and prosperous institution.

As a further and separate defense the defendant alleged that for more than twenty years last past it had been the regular custom and practice of the bank to pay the taxes levied and assessed against all the stock of the bank and to "deduct said taxes so paid from the gross earnings of said bank for the current year."

The court sustained a motion to strike from the answer these several defenses, on the ground that they were redundant, immaterial and constituted no defense to the plaintiff's cause of action. Judgment was thereupon entered in favor of the plaintiff, and the defendant has appealed.

The taxes on this bank stock were paid by the respondent bank under the authority and direction of sec. 1672 of the Rev. Codes, which provides among other things as follows: "The taxes upon such shares must be assessed against the holder of the same in the list of personal property, and must be paid by the bank." While the shares of stock are the personal property of the shareholder and the taxes against the same must be ultimately paid by the owner of the stock, still the statute makes the bank the agent of the stockholder and liable to the county for the tax so levied and assessed. The agency is carried over to the vendee whenever a sale of the stock is made, and the bank is no longer the agent of the original owner. Statutes of this kind have been repeatedly upheld by the supreme court of the United States. (*First Nat. Bank v. Kentucky,* 76 U. S. (9 Wall.) 353, 19 L. ed. 701; *First Nat. Bank v. Chehalis County,* 166 U. S. 440, 17 Sup. Ct. 629, 41 L. ed. 1069; *Merchants' & Mfrs. Nat. Bank v. Pennsylvania,* 167 U. S. 461, 17 Sup. Ct. 829, 42 L. ed. 236; 168 Pa. 309, 31 Atl. 1065.)

The power and authority to tax national bank stock has been expressly conferred upon the state within which the bank is located. Sec. 5219 of the Revised Statutes of the United States provides, *inter alia,* as follows: "The legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere." It will be noted from the foregoing quotation that the power conferred on the state to tax national bank

stock and the methods of levying and collecting such tax *is unqualified and unlimited, subject only to the two restrictions therein named.* Those restrictions have reference only to the rate to be charged and collected and the place in which the stock of nonresidents shall be taxed. The very fact that Congress authorized the assessment of the stock of nonresidents in the place where the bank is located within itself implies the necessity of either collecting the tax through the bank or else by means of garnishment, or other similar process, which will reach out and lay hold upon the stock as the same appears upon the stock-books of the corporation. If the collection depended on a personal action, in many cases it would be impossible to collect the tax at all. The power on the part of the state to do this necessarily carries with it the implied power to make such tax a lien on the stock itself and the earnings and increments derived therefrom. That is the identical thing that has been done in this state as we construe our statute (sec. 1672, Rev. Codes). The bank is required to pay the tax assessed against the stock of its stockholders. The liability on the part of the bank to pay the tax assessed against the stock carries with it an implied lien in favor of the bank and against the stock and the earnings, dividends and profits derived therefrom for reimbursement in the sum thus paid; and this must necessarily be a preferred lien over all other claims, and is a charge against the stock without regard to the person who may be the owner of the stock.

Our attention has not been directed to any decision from the United States supreme court passing upon the identical question here involved. The case most nearly in point on this particular question that we have been able to find is that of *Boston & Albany R. R. Co. v. Mercantile Trust & Deposit Co.*, 82 Md. 535, 34 Atl. 778, 38 L. R. A. 97. The court there had under consideration the liability of a receiver of an insurance company to pay the taxes assessed against its stockholders where the tax had become due prior to the insolvency of the corporation. The Maryland statute there considered provided that "the tax assessed on such stock shall be levied and collected from said corporation and may be charged to

the account of such nonresident stockholders.'' The statute there considered was, in many respects, the same as ours. It, however, went further, and in specific terms provided that the corporation should have a lien on the shares held by the stockholders to reimburse it for the payment of the taxes. The court held that the receiver must pay these taxes regardless of the insolvency of the corporation. The holding of the court on the particular point is epitomized in the syllabus as follows: ''Taxes upon the shares of stock in an insurance company which are by statute charged to and made payable by the corporation are a demand payable out of its assets in the hands of its receiver in case it becomes insolvent after they become due.''

*City of Muskegon v. Lange,* 104 Mich. 19, 62 N. W. 158, was an action against the cashier of a national bank for the collection of taxes due from the stockholders under a statute similar to ours, and the Michigan court said: ''The bank has, what the cashier lacks, an account with the stockholder, and the shares of stock, and it has property in its possession in which the stockholder has a pecuniary interest. . . . . Who can doubt that the intent of the legislature was that the payment required was to be made by the cashier from funds of the bank, and that it was to be charged against the shares of stock taxed, upon the books of the bank?'' And in course of a dissenting opinion by Mr. Justice Grant in the same case, he reinforced the contention that the bank was liable for such a tax, and that it had a lien on the stock together with its earnings and dividends for the payment of such tax. He said: ''The express duty is imposed upon the cashier to pay. In doing this he represents the stockholders. He has in his possession the means of payment. Whatever judgment is rendered against him is binding upon the stockholders. He can pay the judgment out of the funds in the bank which belong to them, and which are under his control. If there are no accrued dividends out of which to pay, the bank, through him, has a lien upon the stock which it can enforce to reimburse itself.''

In *Rosenblatt v. Johnston,* 104 U. S. 462, 26 L. ed. 832, the supreme court held that the receiver of an insolvent national bank was not liable to pay taxes on the stock of such insolvent bank where the payment would have to be made out of the assets of the bank. The court there rules that to require the receiver to make such a payment would amount to holding that the property and assets of the bank might be taxed in violation of sec. 5219 of the Rev. Statutes of the United States.

Following the decision in *Rosenblatt v. Johnston,* the circuit court of appeals for the fifth circuit held in the case of *Stapylton v. Thaggard,* 91 Fed. 93, 33 C. C. A. 353, that in a case where it appeared from the complaint that the bank was insolvent and in the hands of a receiver, under the direction of the controller of the currency, the state could not tax the shares of stock in such insolvent corporation and maintain an action to recover the tax from the receiver out of the assets of the bank. A somewhat similar holding was made in the *City of Boston v. Beal,* 51 Fed. 306. These cases last cited from the federal courts, however, all turn on the question of the insolvency of the bank and the lack of funds belonging to the stockholder and the worthlessness of the bank stock. They seem to hold that, where it is necessary in order for the bank to pay the tax that it resort to the assets of the bank itself, the bank cannot be compelled to make the payment. None of these cases, however, hold that the bank is not liable to the extent of the earnings and profits of the stock or to the extent of the value of the stock itself.

In the case at bar, it is admitted that the stock was not only valuable, but that at the time of the payment of these taxes the bank had in its possession sufficient of the earnings and undivided profits of the bank due to the holder of this stock to more than cover the amount of taxes paid and to reimburse it for its outlay. Under this state of facts, we have no doubt of the liability of the bank to pay, as it did. We are equally well satisfied that the stock and its share of earnings and undivided profits were liable to the bank to reimburse it for the amount thus laid out and expended for taxes. At the time the payment was made the bank was the agent

of the person who was then owner of the stock and made such payment for him and the benefit of the stock he then owned.

Counsel for respondent cites sec. 3324 of the Revised Codes, which provides that, "One who sells or agrees to sell personal property as his own, thereby warrants that he has a good and unencumbered title thereto," and insists that under the provisions of this statute the vendor of the stock warranted its title and that there was no encumbrance against it for taxes or otherwise. That question does not arise in this case for the reason that this is an action prosecuted by the bank against the vendor of the stock and not an action between the vendor and vendee.

It is also urged that under the authority of *Palmer v. Pettingill,* 6 Ida. 346, 55 Pac. 653, there is no such thing as a lien on personal property in this state for taxes. It is true that case so holds, and we think it correctly states the rule. It must be remembered, however, that that case was dealing with personal property generally and particularly a stock of merchandise. Taxes on bank stock are authorized by special statute, and the method of collecting such tax is specifically pointed out by statute. The rule applicable to personal property generally is not controlling in the matter of collecting taxes on bank stock.

There is a very different question, however, presented by the allegations of the answer as to the custom of the bank to pay the taxes on all the stock and charge the same up to the running expenses of the bank. Such a practice, however long it may have been indulged, is clearly contrary to the provisions of the statute. Under the statute of this state, as construed in *First National Bank v. Washington County,* 17 Ida. 306, 105 Pac. 1053, each stockholder is entitled to a deduction in the valuation of his stock to the extent of his unsecured debts due to *bona fide* residents of this state, but this would amount to nothing if the whole tax upon the bank stock may be paid out of the gross earnings of the bank. One stockholder may be entitled to no deductions whatever, while another stockholder may have deductions equal to the assessed value of the stock, in which case he would have no tax what-

ever to pay on his stock. If the whole tax was to be paid out of the undivided earnings of the bank, then the stockholder who had no tax to pay would be charged out of his part of the dividends of the bank to help pay the taxes of a stockholder who is entitled to no deductions. Such a practice is violative of the statute, and cannot be sanctioned.

It follows from what has been said that there was no error in striking out that part of the answer which pleaded the practice and custom of the bank in the matter of payment of taxes on its shares of stock. It also follows that the court erred in sustaining the motion to strike out the first separate answer to the complaint. Judgment is *reversed,* and the cause is remanded. Costs awarded to appellant.

Sullivan, C. J., concurs.*