## ELECTRIC REDUCTION CO. v. LEWELLYN, Collector of Internal Revenue.

(District Court, W. D. Pennsylvania. July 9, 1925.)

No. 3114.

**1. Internal revenue ☞7—Obligation of seller under ore contract held "debt."**

The obligation of a seller, arising out of a contract for the sale of ore, on which the purchaser had made an advance payment, is a "debt," within the meaning of Revenue Act 1918, § 234(a) (5) being Comp. St. Ann. Supp. 1919, § 6336⅛pp.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

**2. Internal revenue ☞7—When bad debt deductible from income stated.**

Where a corporation did not finally ascertain that a debt due it was worthless and charge it off until long after the expiration of the tax year in which it was incurred, the amount is not deductible from its taxable income for that year, under Revenue Act 1918, § 234(a) (5) being Comp. St. Ann. Supp. 1919, § 6336⅛pp.

At Law. Action by the Electric Reduction Company against C. G. Lewellyn, Collector of Internal Revenue. Judgment for defendant.

S. Leo Ruslander and George K. Warn, both of Pittsburgh, Pa., for plaintiff.

Walter Lyon, U. S. Atty., of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge. This is an action at law to recover income and profit taxes paid by plaintiff for the year

1918. It involves an interpretation of the Revenue Act of 1918, § 234 (a) (4) and (5) being Comp. St. Ann. Supp. 1919, § 6336⅛pp, which provides:

"Section 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\* \* \* \* \* \*

"(4) Losses sustained during the taxable year and not compensated by insurance or otherwise;

"(5) Debts ascertained to be worthless and charged off within the taxable year."

The plaintiff claims, under this section, a deduction from its 1918 income of $27,205.-35, advanced by it to one Jouravleff as part payment of the purchase price of certain tungsten ore, which was never delivered, and which sum the plaintiff was unable to recover from Jouravleff.

[1] The plaintiff contends that this sum was a deductible loss, and the government claims that it was a bad debt, which the plaintiff is not entitled to deduct, because it did not charge it off on the books of the company during the year 1918.

The case was tried before the court without a jury under agreement of the parties waiving a jury trial. From the admissions of parties and the proofs offered at the trial we find the following facts:

(1) The Electric Reduction Company, plaintiff, claims of C. G. Lewellyn, former Collector of Internal Revenue, the defendant, the sum of $7,051.55, with interest upon $667.22 thereof from March 15, 1919, and upon $2,092.41 thereof from June 15, 1919, and upon $2,045.91 thereof from September 15, 1919, and upon $2,045.91 thereof from December 15, 1919, as additional corporation income tax, which said amounts were paid to the defendant collector on the respective dates set forth.

(2) The Electric Reduction Company, the plaintiff, is a corporation duly organized under the laws of the state of Delaware, with its principal place of business in Pittsburgh, Pa.

(3) C. G. Lewellyn, the defendant, at the times of payment of said tax of $7,051.55, was the collector of internal revenue for the Twenty-Third district in the commonwealth of Pennsylvania.

(4) The Electric Reduction Company duly filed its income and profits tax return for the year 1918, which showed a tax liability of $8,183.63, which said tax was duly paid to C. G. Lewellyn, the then collector of internal revenue.

(5) On or about November 29, 1922, the Electric Reduction Company filed an amended income and profits tax return for the year 1918, showing a tax liability for said year of $1,132.78, and claiming a loss sustained for the year 1918 in the sum of $27,-205.35, as is more particularly shown hereinafter. With said amended return it filed a claim for refund in the sum of $7,050.85, being the difference between the tax liability shown on the amended return for 1918 and the tax liability shown on the original return for 1918, which was paid. Said claim for refund was rejected by the Commissioner by letter dated April 17, 1923, upon the ground that the loss was not finally and definitely determined to be a loss until 1922, and was not charged off as such until 1922.

(6) The reason alleged by the Electric Reduction Company for the filing of the claim for refund and the amended return was that it claimed to have suffered a deductible loss of $27,205.35 in the year 1918, which was not deducted as a loss for said year 1918 in the original return filed.

(7) The transaction on which said claim of loss is based was as follows:

(8) The Electric Reduction Company entered into a contract with one Konstantine Jouravleff, dated July 2, 1918, and accepted July 3, 1918. Jouravleff therein agreed to deliver to the Electric Reduction Company 150 tons of tungsten ore sheelite at said company's factory, Washington, Pa., in shipments of one car of 30 to 35 tons each month, beginning August, 1918, through to the end of that year; payments, $24 per unit. It is agreed that Exhibit 6, attached to plaintiff's statement, is a true and correct copy of said contract. The Electric Reduction Company agreed to and did accept a trade acceptance for $30,000 in favor of said Jouravleff, payable in 60 days, to apply on and to be deducted from the amount which would be due Jouravleff when he made the first shipment of ore. It is agreed that Exhibit 7, attached to plaintiff's statement, is a true and correct copy of said trade acceptance.

(9) Prior to the making of said contract Jouravleff was unknown to the Electric Reduction Company. He was introduced by one Charles Hardy, a broker handling ores, who, to induce the plaintiff to enter into the said contract, verbally represented that said Jouravleff was a reputable business man of unquestioned integrity and financial responsibility, and that he was in a position to deliver tungsten ore in accordance with said contract.

(10) At the time of making the contract between Jouravleff and the Electric Reduction Company, and in order to induce said company to agree to the terms thereof and to give the acceptance provided for in said contract, the said Charles Hardy, at the request of the said company, verbally undertook to keep the said company fully informed concerning the deliveries of tungsten ore to be made by said Jouravleff under said contract, which deliveries were to be made at a point distant from said company's place of business and its plant, and also concerning the progress said Jouravleff was making in mining and concentrating the said tungsten ore to be used in the fulfilling and performance of said contract, as well as following up and seeing to the deliveries of said tungsten ore by said Jouravleff.

(11) After the making of the contract between Jouravleff and the Electric Reduction Company, said company performed the same on its part to be performed, and executed and delivered to said Jouravleff the acceptance provided for in the contract for $30,000.

(12) The said acceptance was given to Jouravleff with the agreement that it was to cover and be deducted from the price of the first car of tungsten ore to be shipped, which car was to be shipped before the maturity of the trade acceptance on August 30, 1918, and that, if said car was not shipped and delivered as agreed, the plaintiff was at liberty to refuse to pay the said trade acceptance.

(13) The said Charles Hardy had full knowledge of the terms and conditions under which said trade acceptance was given.

(14) John MacGregor Grant, Inc., was, in 1918, a corporation organized under the laws of the state of New York, engaged in the brokerage and banking business, had its principal place of business in New York City, and was a backer and promoter of the enterprise in which Jouravleff was engaged.

(15) The said trade acceptance for $30,000 was made negotiable and unconditional, and was placed before maturity with John MacGregor Grant, Inc.

(16) John MacGregor Grant, Inc., with full knowledge of the facts, and with full knowledge of the fact that the said Jouravleff had not shipped or delivered, and was not able to ship or deliver any car of tungsten ore, as required by the contract between Jouravleff and the Electric Reduction Company, negotiated for the said Jouravleff the said acceptance to innocent holders,

without notice, and received therefor the sum of $30,000.

(17) The Electric Reduction Company duly paid the trade acceptance of $30,000 on August 30, 1918, at maturity, to the holder thereof.

(18) Subsequent to the making of the contract between Jouravleff and the Electric Reduction Company, and before the maturity of said trade acceptance on August 30, 1918, the Electric Reduction Company, from time to time, inquired of Charles Hardy concerning the progress that the said Jouravleff was making in mining tungsten ore, and the said Hardy promised to investigate and report.

(19) The Electric Reduction Company was induced to pay said trade acceptance by receipt of a telegram from Charles Hardy, and in reliance thereon. Said telegram is as follows:

"August 29, 1918.
"Electric Reduction Company, Washington, Pa.
"Reference contract Jouravleff shipment one car will be made to-day.
"Hardy."

The information given in said telegram was false. No car was ever shipped.

(20) The Electric Reduction Company, from time to time, made efforts to obtain from the said Jouravleff shipments of tungsten ore under the terms of the contract between them, and to obtain repayment of the said sum of $30,000, but no part of said contract was ever carried out by the said Jouravleff, except the said company received from Jouravleff in December, 1918, 56 bags containing 4,468.24 pounds of sheelite concentrates (tungsten ore), of a value of $2,784.65, which amount the Electric Reduction Company applied on said trade acceptance of $30,000.

(21) The Electric Reduction Company in March, 1919, brought three suits in the Supreme Court of the county of New York, state of New York; one against Konstantine Jouravleff, one against John MacGregor Grant, Inc., and one against Charles Hardy, the broker, to recover the said sum of $27,205.35. Judgment was obtained against the said Jouravleff in 1919, in said suit against him. The said judgment proved worthless, as the said Jouravleff had no assets and had disappeared. In 1921 the said suit against John MacGregor Grant, Inc., was discontinued as worthless, as the defendant in that action had been adjudged bankrupt after the commencement of the suit. In the suit against Charles Hardy, the trial

court, on November 23, 1922, directed a verdict against the therein plaintiff, upon the special defense of Hardy that the alleged agreement between the Electric Reduction Company and him constituted a special promise by Hardy to answer for the debt, default, or miscarriage of another person, and that said promise, note, or memorandum was not made in writing or subscribed by Hardy, and was void under the statute of frauds.

(22) The Electric Reduction Company did not charge off the amount of $27,205.-35 as a loss upon said trade acceptance until November, 1922, but carried the said amount of $27,205.35 on the books of the company during the year 1918, as a bills receivable item, and the item was so carried until November 29, 1922, or thereabout, when the amended tax return for the year 1918 was filed, and the said amount was then charged off as a loss.

On this state of facts we find as a matter of law that the plaintiff is not entitled to recover. The transaction involved is one of debt, falling within the provisions of section 234 (a) (5) of the Revenue Act of 1918, hereinbefore quoted. Therefore, inasmuch as this debt was not ascertained to be worthless and charged off during the year 1918, the plaintiff is not entitled to the deduction claimed.

The obligation arising out of the contract between the plaintiff and Jouravleff was clearly one of debt, and comes within the definition of that term under all the authorities, among which may be noted the following definition of the word "debt":

"A sum of money due by certain and express agreement." "All that is due a man under any form of obligation or promise." Bouv. Law Dict. (Rawle's Third Revision) vol. 1, p. 786.

"A sum of money due upon contract, express or implied. In a larger sense, the word means that which one person is bound to pay to another, or to perform for his benefit; a sum of money due from one person to another, whether money, goods, or services; due; all that is due under any form of obligation or promise." Corpus Juris, vol. 17, p. 1373.

"Any money, goods or services that one is bound to pay to another." Id. p. 1374, note 46 (a).

"In the most extensive sense of the term, everything is a debt which is of absolute obligation." Id. p. 1375.

"It might be properly and safely laid down as a general rule that all obligations arising from contracts, either express or implied, either for the payment of money or the delivery of goods, create a debt on the part of the obligor." Hunt v. Norris (La.) 4 Mart. (O. S.) 517, 532.

[2] We have, under the statute, two classes of deductions: (1) Bad debts ascertained to be worthless and charged off during the taxable year; and (2) losses sustained and not compensated for by insurance or otherwise. It thus clearly appears that a loss arising from a bad debt is not the character of a loss that is an allowable deduction under section 234 (a) (4), above, for, had it been so intended, there would be no necessity for specifying the two classes of allowable deductions. The plaintiff lost the money it paid Jouravleff on account of the purchase price of ore, but that loss arose out of a bad debt, which, to be claimed as a deduction from income, must be charged off during the taxable year. This was not done. The plaintiff cannot recover.

Judgment may be entered in this case in favor of defendant, and due exception noted to the plaintiff.