**PORTER, State Commissioner of Finance, v. UNITED STATES.**

District Court, D. Idaho, S. D. June 23, 1927.

No. 1265.

1. **Internal revenue 38(8)—Suit for refund of income tax held barred by limitation (Revenue Act 1924, § 281 [b] [e]).**

Suit for refund of income tax paid for year 1917 *held* barred, under Revenue Act 1924, § 281 (b) (e), 43 Stat. 301, for failure to file claim therefor within four years after payment, or to file waiver of right to have tax determined and assessed within five years after return.

2. **Internal revenue 7(17)—Money due on note is a "debt," and unless ascertained to be worthless and charged off during taxable year is not deductible from gross income (Revenue Act 1918, § 234 [a], [5], being Comp. St. § 6336⅛pp).**

Money due a bank on a note is a "debt," within the meaning of Revenue Act 1918, § 234 (a), (5), being Comp. St. § 6336⅛pp, and unless ascertained to be worthless and charged off during the taxable year is not deductible from gross income of that year.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

3. **Internal revenue 7(20)—Taxes assessed against stockholders of bank and paid by bank under state statute are not deductible from its gross income (Comp. St. Idaho 1919, §§ 3297, 3299, 3302, 3303).**

Under Comp. St. Idaho 1919, §§ 3297, 3299, 3302, 3303, which requires bank shares to be assessed against the owners in the county and city where the bank is located, and the tax thereon to be paid by the bank, which is given a lien on the stock and its earnings for reimbursement, the tax so paid is not one imposed on the bank or its property, and is not deductible from its gross income under internal revenue statutes.

4. **Internal revenue 38(1)—Action to recover taxes paid must be based on same grounds as claim for refund.**

Action to recover taxes paid must be based on same grounds as claim for refund filed with commissioner.

5. **Internal revenue 7(19)—Bad or illegal loans made by officers of a bank without fraudulent intent are not deductible from gross income as losses through embezzlement (Comp. St. Idaho 1919, § 8450).**

Worthless loans, made by officers of a state bank through bad judgment, or even in disregard of requirements of state statutes, are not deductible from gross income as losses through embezzlement, in the absence of evidence of fraudulent intent, in view of Comp. St. Idaho 1919, § 8450.

At Law. Action by E. W. Porter, Commissioner of Finance of the State of Idaho, as liquidating agent of the Citizens' State Bank of Buhl, Idaho, against the United States. On motion of defendant for nonsuit and dismissal. Motion granted.

Frank L. Stephan, Atty. Gen., and Leslie J. Aker, Sp. Atty., of Boise, Idaho, for plaintiff.

H. E. Ray, U. S. Atty., and William H. Langroise, Asst. U. S. Atty., both of Boise, Idaho, and A. George Bouchard, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for defendant.

CAVANAH, District Judge. The commissioner of finance of the state of Idaho, as liquidating agent of the Citizens' State Bank of Buhl, brings this suit to recover from the United States certain income taxes alleged to have been erroneously assessed and collected from the bank for the taxable years 1917, 1918, 1919, and 1920, under the income and excess profits tax provisions of the Revenue Act (43 Stat. 253). The tax was assessed on the net income determined by the Commissioner of Internal Revenue, upon reports made by the bank. Plaintiff insists that there was a loss during each year, instead of a net income determined by the Commissioner.

The amount sued for is based upon the net income as determined by the Commissioner for the four years. Whether there was a gain or a loss depends primarily upon whether the deductions contended for by the plaintiff are to be allowed upon the gross income of the bank. This question calls for the consideration of certain provisions of the Revenue Act and the evidence introduced. At the close of plaintiff's testimony, the defendant moved for a nonsuit and a dismissal of the action, upon the ground that the testimony was insufficient to entitle plaintiff to recover, and asserted certain reasons why the assessment of the tax made by the Commissioner should not be changed.

[1] I am confronted, first, with the contention of the government that plaintiff's first cause of action, relating to the recovery of the refund of taxes assessed for the year 1917, is barred by the statute of limitations, as the claim for refund was not filed with the Commissioner until November 29, 1924, more than four years after the date of payment of the tax by the bank; nor was a waiver filed of its right to have the tax due for said year determined and assessed within five years from the date the return was due. The evidence discloses that the claim for refund for the year was not filed until November 29, 1924, which was more than four years from the date of the payment of the

tax by the bank, and that no waiver was filed with the Commissioner within five years from the date the return for the taxable year 1917 was due. Hence it would seem that plaintiff's first cause of action is barred under section 281 (b) and (e) of the Revenue Act of 1924, which provides that no refund of a tax paid shall be allowed after four years from the time the tax was paid, unless before the expiration of such four years a claim therefor is filed by the taxpayer, except where a taxpayer shall, within five years from the time the return for the taxable year 1917 was due, file a waiver of its return to have the tax due for such taxable year determined and assessed within five years after the return was filed.

It is further provided by section 1012 of the act (Comp. St. § 5951) that all claims for a refund of such taxes must, except as provided in section 281 of the act of 1924, be first presented to the Commissioner of Internal Revenue within four years next after the payment of such tax. Section 1013 (a) of the act of 1924 (Comp. St. § 6346) expressly provides that no suit or proceeding shall be maintained for the recovery of any such tax until claim for refund has been filed with the Commissioner according to the provisions of law in that regard. It is evident under the testimony that none of these provisions of the Revenue Act were complied with by the plaintiff or the bank concerning the plaintiff's claim of refund for the year 1917; hence the plaintiff's right to recover the tax for that year is barred under these provisions of the act. McDonald Coal Co. v. Lewellyn (D. C. Pa.) 9 F.(2d) 994. This is the general rule applying to this statute of limitations, affecting rights springing into existence by virtue of the Revenue Act.

The first observation relating to the plaintiff's second, third, and fourth causes of action is that the act of Congress provides that the amount of the tax shall be based upon the "net income" received by the bank within the taxable year, and that the "net income" shall be determined by finding first "gross income," and then taking from this amount certain specified deductions. The amount of the "net income" shall be received during the year, and upon that the amount of the tax is to be determined. There is a sharp controversy between the parties under the evidence as to whether certain items should be considered and included in the "gross income" and in the deductions to be made in order to correctly ascertain the "net income" of the bank.

The claims filed by the plaintiff with the Commissioner, and upon which this suit is based, set forth "gross income" of the bank for the different years to be less, and the deductions greater, than those fixed and allowed by the Commissioner in determining the amount of tax to be paid. To illustrate: We find that the plaintiff claims that for the year 1918 there was no "net income" of the bank upon which to base a tax, while, upon the other hand, the government contends that under the evidence the "gross income" of the bank for the year was $53,669.20, and the deductions to be allowed should be $32,086.45, being approximately the amounts contained in the income tax return filed by the bank, and which leaves a net income of $21,086.43 upon which the tax of $7,570.56 should be sustained.

The remaining years of 1919 and 1920 present similar situations, except as to the amounts of gross income, net income, deductions, and the tax, as the questions urged are the same and are applicable to each year.

The essential facts are that the Citizens' State Bank, a corporation of which the plaintiff, as Commissioner of Finance of the state, is now liquidating for the taxable years 1918, 1919, and 1920, made and filed its income tax returns with the collector of internal revenue and paid thereon, after certain changes were made as to the amounts of income and profit taxes, the amounts involved here. Thereafter, in December, 1921, the bank closed its doors, and the plaintiff, as such liquidating agent, proceeded to liquidate its affairs. The claims in question for refund were then filed by plaintiff. He asserts that the bank has suffered a deductible loss of $81,147.32 for the taxable year 1918, $163,129.35 for the year 1919, and $100,083.07 for the year 1920, which were not deducted as a loss for said years in the original returns filed, but, on the contrary, said amounts were reported in the returns as "gross income." These items consisted of loans made by the bank to borrowers during the respective years, and which were evidenced by promissory notes, executed by the borrowers, which included the principal and in some instances interest, and were not paid to the bank. The bank during these three years paid certain amounts upon bank stock taxes, for which it was not reimbursed by the stockholders, and did not include such amounts in its returns as deductions, nor in its claims for refund.

[2] Considerable evidence was introduced by plaintiff relating to the conduct and acts of certain officers of the bank in failing to secure proper security for the loans made to

themselves and others, and in allowing overdrafts and loans to those who were not able to repay the bank, which is claimed by the plaintiff to be in violation of the banking laws of the state, and therefore constituted "constructive embezzlement." The principal contention of plaintiff is that these loans, which were not paid back to the bank, and the uncollected interest thereon, were all losses to the bank, and are not to be considered as worthless debts, to be charged off within the taxable year. The question, then, is whether or not these so-called losses come within subdivisions 4 and 5 of section 234 (a) of the Revenue Act of 1918 (Comp. St. § 6336⅛pp). The act provides in section 234 (a), that in computing the net income of the corporation subject to the tax imposed by section 230 (Comp. St. § 6336⅛nn) there shall be allowed as deductions "(4) losses sustained during the taxable year and not compensated for by insurance or otherwise; (5) debts ascertained to be worthless and charged off within the taxable year." 40 Stat. at L. 1077.

It would seem clear that a note due a bank for a loan is a "debt," and comes within the definition of that term. Bouvier says: "A sum of money due by a certain and expressed agreement" is a debt. 1 Bouv. Law Dict. 786. "In a purely technical sense, it is * * * a sum of money due upon contract, expressed or implied. In a large sense, the word means that which one person is bound to pay to another, or to perform for his benefit; a sum of money due from one person to another, whether money, goods, or services; due; all that is due under any form of obligation or promise." 17 C. J. p. 1373.

There appears to be two classes of deductions under the statute: "(1) Losses sustained during the taxable year and not compensated for by insurance or otherwise. (2) Bad debts ascertained to be worthless and charged off during the taxable year." The inquiry, then, presents itself: Why did Congress find it necessary to specify these two classes of allowable deductions, if it did not have in mind a distinction between a worthless debt and a loss? A loss and a worthless debt may amount to the same thing, if the debt is charged off in time as required by statute; but Congress has said that, to entitle one to a deduction for a worthless debt, it must be ascertained and charged off during the taxable year. This same interpretation was given to these two provisions of the act in a learned discussion by Judge Davis in the case of Electric Reduction Co. v.

Lewellyn (C. C. A.) 11 F.(2d) 493, where it was said:

"If the $27,205.35 is a 'loss,' within the meaning of subdivision (a) (4), it may be deducted from the income of 1918, as it was actually 'sustained' in that year. If it was a bad 'debt,' within the meaning of subdivision (a) (5), it may not be deducted from the income of that year, because it was not 'ascertained to be worthless and charged off within the taxable year' of 1918. * * * Congress doubtless had in mind a distinction between a loss and a worthless debt. Every worthless debt is a loss, but not every loss is a worthless debt. Every worthless debt is allowed as a deduction, if it is ascertained to be worthless, and is charged off within the taxable year. So far as allowance as a deduction is concerned, a loss and a worthless debt amount to the same thing, if the latter is charged off in time."

Although the trial court was reversed in that case, yet the same interpretation of this act was given by both courts; the reversal being based upon a difference of view as to whether the item of $27,205.38 was a loss or a debt, the trial court holding that it was a debt, while the Circuit Court of Appeals, taking the opposite view, held that it was a loss. Electric Reduction Co. v. Lewellyn (D. C.) 8 F.(2d) 91.

The losses in the present case were nothing more than sums of money due upon express contracts, which the borrowers were bound to pay to the bank, and fall within the provisions of section 234 (a) (5) of the Revenue Act of 1918, which brings them under the class of "debts." If Congress had intended that worthless debts, not ascertained and charged off during the taxable year, should include "losses," it would have been very easy to have said so, and, where such intention is not so expressed, the difficulty in attempting to apply the provision of the statute as to "losses" to "debts" is that we are confronted with the other express provision of the statute requiring the taxpayer, before deductions can be allowed, to first ascertain and charge them off as worthless within the time. It would seem impossible to take any other view, and at the same time recognize the force and effect of section 234 (a) (5).

While I recognize the general rule of construction of a taxing statute to be that doubts should be resolved in favor of the taxpayer and against the government (American Net & Twine Co. v. Worthington, 141 U. S. 468, 12 S. Ct. 55, 35 L. Ed. 821; Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211), yet it seems clear to me that these loans in-

volved are "debts," and, as they were not ascertained to be worthless and charged off during the taxable years in question, the plaintiff is not entitled to have them classed as deductions.

[3] The second observation to be made is that plaintiff contends that the state and county taxes paid by the bank during these years on bank stock of stockholders should have been included in the bank's returns as deductions as taxes paid. The Revenue Act allows as a deduction taxes assessed against a bank or on its property. The test then here is: "Were these taxes assessed against the bank itself or against the stockholders? The taxes were levied under the state law, which provides that the stockholders of every banking association must be assessed and taxed in the county and city where such bank is located on the value of their shares of stock therein, and the bank must furnish to the assessor a full and correct list of names of its stockholders, and the tax must then be assessed against the holder appearing in the list as personal property, and must be paid by the bank; but the owners of such shares are liable for the taxes paid by the bank. Sections 3297, 3299, 3302, 3303, Comp. Stats. of Idaho, 1919.

The Supreme Court of the state, in considering this statute, has held that the shares of stock in banks must be assessed against the owners of such stock, and the tax thereon must be paid by the bank, and when so done the bank has a lien against the stock, and the earnings, dividends, and profits derived therefrom, for reimbursements in the sum so paid; but it cannot charge the same up against the aggregate earnings of the bank as current expense or otherwise, as the same must be charged against the shares of stock upon which such payment was made, or against the owner of the stock. Shainwald v. First Nat. Bank of Weiser, 18 Idaho, 290, 109 P. 257. A similar statute has been construed by the Circuit Court of Appeals of the Fifth Circuit, wherein it was said:

"The statute * * * imposes the tax, not on the bank or its capital, but upon the shareholders; the bank being required to pay for them. * * * The conclusion is that the payment in question was not for 'taxes imposed,' within the meaning of those words as used in the provisions of the Corporation Tax Act [36 Stat. 112–117] as to the deductions allowable in ascertaining the corporation's net income, as the tax in question was imposed, not on the corporation, but upon its shareholders." First Nat. Bank of Jackson, Miss., v. McNeel, 238 F. 559.

The Revenue Act permits as a deduction from gross income the payment of taxes made within the year by the corporation, being such tax liability assessed solely upon the corporation or its property, and not to discharge liabilities for which others would be ultimately responsible. "Though payment of such taxes is a duty imposed upon the bank, it cannot be said that the taxes are imposed either upon it or its property. The taxes are imposed upon the shareholders and their property, and the payment is by the bank only as their representative." Eliot Nat. Bank v. Gill (C. C. A.) 218 F. 600, 602; Nat. Bank of Commerce v. Allen (C. C. A.) 223 F. 472; Northern Trust Co. v. McCoach (D. C.) 215 F. 991.

[4] It seems well settled by the authorities that, under statutes similar to the Idaho one under consideration, the payment of such taxes on bank stock is a tax assessed on the stockholders of the bank, and not upon the bank itself, and is not allowed as a deduction from the gross income of the bank. In this connection it may be further said that if the claim of the parties for a refund, filed with the Commissioner, does not contain this ground, it would seem that it cannot be considered at this time, as this action should be based upon the same grounds and only such as were presented to the Commissioner of Internal Revenue in the claim for refund. The purpose of this condition is to afford the Commissioner an opportunity to correct errors, if any, and to spare the parties the burden of litigation. Tucker v. Alexander, 15 F.(2d) 356 (C. C. A. 8th Circuit, opinion filed Oct. 27, 1926); Red Wing Malting Co. v. Willcutts (C. C. A.) 15 F. (2d) 626.

[5] Finally we come to the question whether the facts of the case bring the conduct of certain officers of the bank during these years, in negotiating these loans, under the charge of the plaintiff that it constituted "constructive embezzlement," entitling the plaintiff to deductions arising out of the financial inability of certain borrowers of the bank to meet their obligations, it being urged by plaintiff in his complaint and on the argument that he is entitled to have allowed as a deduction these loans, which were not paid back to the bank for the reason that they and certain overdrafts were made to officers and stockholders of the bank who were insolvent and without proper security, and their failure to charge off overdue and unsecured loans, were all in violation of the banking laws of the state. To bring this contention under the provision of the stat-

ute relating to "losses" or "embezzlement," it must appear from the evidence that the conduct of the officers of the bank in negotiating these loans was with the fraudulent intent to either appropriate the funds represented by the loans to their own use, or with the fraudulent intent of depriving the bank of the funds. Section 8450, Comp. Stats. Idaho, defines embezzlement to be "the fraudulent appropriation of property by a person to whom it has been intrusted."

The mere fact that errors were made or bad judgment exercised in negotiating these loans by officers of the bank, or a disregard of some of the requirements of the banking laws of the state, without evidence showing fraudulent intent, would not seem to be sufficient to establish that they were done with the intent to injure or defraud the bank. I am not impressed with this contention under the evidence, as this record is silent as to there being established any intent upon the part of those who negotiated these loans on behalf of the bank to appropriate the funds to their own use, or to injure or defraud the bank. It may be that they did not use the best of judgment in passing upon the financial ability of the borrowers to repay the bank, yet that would not constitute embezzlement or theft. After all, the contention takes us back to the claim that the conduct of the officers of the bank in making these loans resulted in nothing more than "bad debts," which, as has been stated, are not allowable as deductions.

These considerations lead us to the granting of the motion for nonsuit and a dismissal of the complaint.