UNITED STATES v. KLAUSNER et al.

Circuit Court of Appeals, Second Circuit.
April 9, 1928.

No. 217.

1. Internal revenue ⬅️7(11), 9(27)—Substance of transaction controls in tax case, in determining whether transaction was sale of corporate assets or of stock.

In suit against former owners of capital stock of corporation, which was dissolved, for additional income and excess profits taxes, substance of transaction controlled as to whether transaction was a sale of corporate assets for $200,000, or a sale of corporate assets for $100,000 and a sale of defendants' stock for $100,000.

2. Internal revenue ⬅️28(2)—Evidence in income tax case showed transaction, which defendants claimed was sale of corporate assets for $100,000 and of defendants' stock for $100,000, was sale of corporate assets for $200,000.

In suit against former owners of capital stock of corporation, which was dissolved, to collect additional income and excess profits taxes assessed against corporation for certain years, on theory that, shortly before dissolution, defendants had received part of purchase price for sale of corporation, additional assessment being based on increase in item of profit realized on sale of assets of corporation, evidence *held*, to show that transaction, which defendants claimed was sale of corporate assets for $100,000 and sale of defendants' stock for $100,000, was in fact a sale of corporate assets for $200,000.

3. Internal revenue ⬅️7(19), 9(27)—Guarantors' claim against corporation, whose indebtedness it guaranteed, could be deducted only in taxable year it was charged off; "bad debt;" "loss" (Revenue Act 1918, § 214 (a) (7) [Comp. St. § 6336⅛g (a) (7)]).

Claim of guarantors against corporation, whose indebtedness it guaranteed and which it paid, was a "bad debt," and could be deducted only as of taxable year in which it was ascertained to be worthless, and was charged off, under Revenue Act 1918, § 214 (a) (7), Comp. St. § 6336⅛g (a) (7), and was not a "loss," within such section.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Bad Debts; First and Second Series, Loss.]

4. Equity ⬅️66—Plaintiff must do equity, to obtain equitable relief.

United States, suing in equity to collect from former owners of stock of corporation additional income and excess profits taxes assessed against corporation, must do equity, if it is to get equitable relief.

5. Internal revenue ⬅️7(17)—Former stockholders, being liable for additional taxes assessed against corporation, were entitled to credit for overpayment on personal income taxes because of reporting transaction as sale of stock, instead of corporate assets.

Where transaction, which former owners of corporate stock claimed was sale of corporate assets for $100,000 and sale of defendants' stock for $100,000 was sale of corporate assets for $200,000, defendants, being liable after dissolution of corporation, for additional taxes assessed against corporation because of profit on sale of assets, were entitled to credit for overpayment they may have made on personal income taxes by reason of reporting $50,000 each as income from sale of his stock.

6. Internal revenue ⬅️28(2)—In suit against former stockholders to recover additional taxes assessed against corporation, decree could only be for balance, after allowing defendants proper credits.

If claim of corporation against another corporation was treated as liquidation distribution made to stockholders on dissolution of corporation, former stockholders, in suit to collect additional income and excess profits taxes assessed against former corporation, were entitled to deduction from personal income taxes in year in which claim was proved worthless and written off, and decree could be only for balance, after all proper credits were allowed to defendants.

Appeal from the District Court of the United States for the Eastern District of New York.

Bill in equity by the United States against Louis Klausner and another. From a decree dismissing the complaint, the United States appeals. Reversed and remanded.

This bill in equity was brought by the United States against Klausner and Fain to collect from them as former owners of the entire capital stock of Crystal Knitting Mills, Inc., a corporation which was dissolved in December, 1919, additional income and excess profits taxes assessed against said corporation for the years 1918 and 1919. The theory of the government's case was that upon the sale of the corporate assets, shortly before the dissolution of the corporation, part of the purchase price had been paid to the defendants, and that the corporate funds thus traced into their hands were chargeable with corporate taxes.

The defendants answered, admitting that the additional tax assessed for the year 1918, in the sum of $1,869.58, was due from the corporation, but denying their own liability to pay it. As to the additional tax assessed for the year 1919, they denied both the validity of the assessment and their own liability, if any tax were due from the corporation. The additional assessment for the last-mentioned year was based chiefly upon an increase in the item of profit realized on sale of the assets of the corporation, the plaintiff contending that its capital assets were sold for $200,000. The defendants, on the other hand, claimed that the sale price of the corporate assets was only $100,000,

and that a like sum was paid to them individually for the purchase of their shares of stock.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (H. H. Kellogg, Asst. U. S. Atty., of Brooklyn, N. Y., C. M. Charest, General Counsel, Bureau of Internal Revenue, and I. R. Blaisdell, Special Attorney, Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the United States.

Donald Horne, of New York City (Charles Green Smith, of New York City, of counsel), for respondents.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). The chief question is whether or not the defendants received money which was really the property of the corporation and, in effect, distributed to them as a liquidating dividend. This requires a somewhat detailed statement of the facts.

In May, 1919, one Nufer desired to purchase the plant of the Crystal Knitting Mills, Inc. A formal contract dated May 16th was entered into between the corporation, Klausner and Fain, its sole stockholders, and Nufer, the purchaser. The corporation agreed to sell its plant, machinery, and fixtures, including the lease of the premises upon which its plant was located, for $200,000, and Nufer agreed to pay that sum to the corporation. The bill of sale and payment of the final installment of the price were to be exchanged on May 29, 1919. The plant was to be free of liens on that date. The corporation and its stockholders agreed that Nufer should have the right to use the name "Crystal Mills, Inc.," for a corporation he intended to form, and that he might have the bill of sale run to it. They also agreed to cause the vendor corporation to be dissolved as soon after June 1, 1919, as all its assets had been reduced to possession and all its liabilities liquidated. Oral testimony was given to the effect that the corporation had agreed to pay a broker's commission of $50,000 to one Rogosin who was associated with Nufer in the purchase, so that the net price which the corporation would have realized under this contract was $150,000.

It is claimed by the defendants that this contract was rescinded and that the documents and money exchanged by the parties on May 29th were in execution of a new and different oral agreement. By bill of sale dated May 29, 1919, the vendor corporation conveyed to Crystal Mills, Inc. (the new

corporation organized by Nufer in the meantime), its plant, machinery, fixtures, and lease, its good will, trade-marks, patents, and trade-names, also typewriters and desks on the premises, and one automobile truck. The vendor corporation also assigned to the vendee its right to receive, after June 14, 1919, deliveries of artificial silk under a valuable contract with the Viscose Company which had been acquired by the vendor subsequent to May 16th. Thus the corporation conveyed more property than it had agreed to sell under the contract of May 16th. For these conveyances it received $50,000, in addition to $50,000 already paid under the contract of May 16th, making a total consideration of $100,000 received by it. It was relieved from paying the broker's commission to Rogosin. Another $100,000 was paid by Nufer to Klausner and Fain who executed an agreement with the vendee corporation. This agreement recited that they had sold to the vendee their stock in Crystal Knitting Mills, Inc., and tendered their resignations as officers, and had received therefor the sum of $100,000. It provided that Klausner and Fain should have the privilege of remaining temporarily in the premises purchased from their corporation for the purpose of permitting them to complete certain merchandise in course of manufacture, and that on June 14, 1919, they should remove all merchandise belonging to them. Klausner and Fain, on their part, agreed, among other things, not to entice away employees of the vendee, and not to use the name Crystal in any business subsequently engaged in by them. They also guaranteed that the assets of Crystal Knitting Mills, Inc., were greater than its liabilities by at least $150,000, and that they would indemnify the vendee in case it should be called upon to pay any judgment which might be obtained against Crystal Knitting Mills, Inc. Thus the defendants undertook somewhat different obligations than in their contract of May 16th. It was testified that the stock certificates were indorsed and delivered to the lawyer who represented both sides with instructions to supervise the dissolution of the corporation.

After closing the transaction as above outlined, the defendants continued as stockholders of record and officers of the vendor corporation; they acted for the corporation in collecting its accounts receivable and paying its debts; they made out its income tax return for the year 1919; and in November of that year they executed an affidavit in connection with dissolution proceedings stating

that they were the only stockholders. It was testified that these things were done in their names as a matter of convenience. In their individual income tax returns for 1919, Klausner and Fain each reported the sale of his stock in Crystal Knitting Mills, Inc., for $50,000.

[1] We may concede the defendants' contention that the contract of May 16th was rescinded and a new arrangement was made and carried out on May 29th. The question remains what was the real nature of that arrangement. It is argued that the form not the substance of the transaction must control, and we are referred to United States v. Isham, 17 Wall. 496, 21 L. Ed. 728, and Lederer v. Fidelity Trust Co., 267 U. S. 17, 45 S. Ct. 206, 69 L. Ed. 494. Those cases hold that in construing a law imposing a documentary tax the form and terms of the instrument are controlling. But the substance rather than the form of the transaction governs in the case of a transfer tax. Goodyear Co. v. United States, 273 U. S. 100, 103, 47 S. Ct. 263, 71 L. Ed. 558, where the Isham Case is expressly distinguished. So also in the case of an income tax. In Weiss v. Stearn, 265 U. S. 242, 254, 44 S. Ct. 490, 492 (68 L. Ed. 1001, 33 A. L. R. 520) it is said:

"Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants; and when applying the provisions of the Sixteenth Amendment and income laws enacted thereunder we must regard matters of substance and not mere form."

See, also, Eisner v. Macomber, 252 U. S. 189, 206, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. We must look, therefore, to the substance of the transaction of May 29th.

[2] According to the defendants' interpretation, the corporation was to sell to Nufer for $100,000 its plant, for which two weeks before he had contracted to pay $200,000, and in addition was to give him the valuable Viscose contract and certain other property, the value of which does not appear, not included in the earlier contract. This would leave the corporation—stripped of the property conveyed—not quite solvent. Nufer was to pay $100,000 for stock which was worthless and under which he never expected to exercise any rights, unless his demand that the corporation be dissolved be so considered. The very fact that the defendants guaranteed that the corporation's assets were greater than its liabilities by $150,000 shows that this was a fictitious purchase of the stock. If the stock was really sold to Nufer, then he would be entitled on liquidation to this surplus. No one ever intended that he should get back $150,000 of the $200,000 he had paid to the corporation and its stockholders. He allowed the defendants to continue in control of the corporation just as they had before the alleged sale. He demanded no accounting of subsequent transactions of the corporation. His only interest in the stock was to see that the corporation should be dissolved, as the defendants had agreed it should be in the contract of May 16th. Delivery to the lawyer of indorsed certificates was a reasonable method of assuring performance of such undertaking. Nufer's exaction of a promise of indemnity against debts of the corporation was scarcely more than the stockholders had undertaken in their earlier contract in promising dissolution after liquidation of the corporate debts. It was a necessary part of any plan to purchase the assets of the corporation, because, if debts were not paid, the conveyance would have been in fraud of creditors. It is true the new arrangement relieved the corporation from a $50,000 "broker's commission." That, as we take it, was the real consideration for the conveyance of the Viscose contract and the other additional property and for such new obligations as the defendants were willing to assume. To us it seems clear that the transaction was really a sale of the corporate assets for $200,000, and that the "sale" of the stock was fictitious. We need not go so far as to say that stockholders cannot, for the purpose of reducing taxes, put an inflated price on their stock and cause their corporation to convey its assets at an undervaluation. If the transaction is actually carried out in that form, perhaps it will not be subject to successful attack by the taxing officials. See Fraser v. Nauts, 8 F.(2d) 106 (D. C. Ohio). We do not now pass on that question. In the case at bar, the sale of the stock was purely fictitious; it amounted to no more than an agreement by the stockholders to dissolve their corporation. Therefore the full purchase price must be regarded as having been paid to the corporation, and $100,000 thereof as having been distributed to the defendant shareholders. (The sum of $5,500, however, they must be deemed to have repaid to the corporation in connection with the Bloomingdale guarantee hereinafter described.) It is not disputed by defendants that, if the transaction is to be thus construed, they are liable for the corporate taxes.

Another objection is made to the reassessment for 1919 because of an item of $82,500 which defendants claim should be deducted in determining the tax for that year. Crystal Knitting Mills, Inc., had guaranteed the indebtedness of another corporation, Navy Knitting Mills, Inc., to Bloomingdale Bros. The stockholders of Crystal Knitting Mills had guaranteed its guaranty. On July 3, 1919, the guaranteed indebtedness of the Navy Knitting Mills amounted to $116,000. Bloomingdale Bros. called upon the guarantors, and they settled the demand for $82,500, of which $77,000 was paid by the corporation and $5,500 by the stockholders individually. Bloomingdale Bros. thereupon delivered to Crystal Knitting Mills a written assignment of its account against Navy Knitting Mills. This account was an asset of the corporation. The oral testimony is that the account was then considered to be worthless, but Crystal Knitting Mills did not charge it off as a bad debt or loss in its income tax return for 1919. Upon dissolution of the corporation, the account was apparently treated as the property of the stockholders, Klausner and Fain. They presented the claim for $82,500 in the bankruptcy proceedings of Navy Knitting Mills, which was adjudged bankrupt in December, 1923. Later in 1924 they executed releases of all claims against the bankrupt in order that a composition might be effected, which would have been impossible had the large indebtedness to them been included. In the individual income tax returns of Klausner and Fain for the year 1924, each reported a loss of $20,000 on account of the Navy Knitting Mills bankruptcy. The oral testimony indicates that these items of $20,000 represented a loss additional to the $82,500 account, so that apparently no taxpayer has ever deducted any sum on account of the worthless $82,500 account.

[3] We agree with the government's contention that the claim against the Navy Knitting Mills was a "bad debt" and could be deducted only as of the taxable year in which it was ascertained to be worthless and was charged off. Revenue Act of 1918, § 214 (a) (7) (Comp. St. § 6336⅛g[a] [7]); Porter v.

United States, 20 F.(2d) 935 (D. C. Idaho). It was not a "loss" within said section 214 (a) (7). Lewellyn v. Electric Reduction Co., 48 S. Ct. 63, 72 L. Ed. ——, decided November 21, 1927, we do not regard as inconsistent with this view. There is no proof that the debt was wholly worthless in 1919. The Navy Knitting Mills continued in business for more than four years. Doubtless Klausner and Fain had not given up all hope of realizing something upon it, even though, as they say, they feared the bankruptcy of the debtor should they press the claim in 1919. After dissolution of the corporation, the claim was treated as a debt owing to Klausner and Fain; in other words, the corporation made a distribution to stockholders, in property rather than cash, with respect to this claim. It should be so considered in figuring income and deductions for their personal income taxes for the years in question.

[4-6] This is a suit in equity, and the plaintiff must do equity if it is to get equitable relief. Therefore, while the tax of Crystal Knitting Mills must be calculated as plaintiff contends, the defendants will be entitled to a credit of any overpayment they may have made on their 1919 taxes by reason of reporting $50,000 each as income from a sale of his stock. If the claim against Navy Knitting Mills is treated as a liquidation distribution made to them in 1919 (and we do not say it must be taken at its face value), they will be entitled to a corresponding deduction in the year when it was proved worthless and written off. In short, the decree can only be for the balance after all credits are allowed to defendants which they would have been entitled to, had their taxes been correctly calculated during the several years in which their returns were affected by the incorrect assumption that the corporate assets were sold for $100,000 and their stock for $100,000. This will require recalculations for several years, and probably a reference to a master if the parties cannot agree.

The decree is reversed and the cause remanded for further proceedings consistent with this opinion.